**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

FILED
IN CLERKS OFFICE

2004 OCT 15  P 3: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| TREMONT REALTY CAPITAL, INC.,<br>    Plaintiff,<br><br>v.<br><br>PINNACLE GROUP, LLC, ADAMS<br>CANYON RANCH, LLC, JOHN LANG,<br>and MICHAEL GRADY,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DOCKET NO. 04-11853-RGS**

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO DISMISS PURSUANT FED. R. CIV. P. 12(b)(2),**
**OR IN THE ALTERNATIVE,**
**MOTION FOR TRANSFER OF VENUE PURSUANT TO 28 U.S.C. § 1404(a)**

**CLARK, HUNT & EMBRY**

William J. Hunt, BBO # 244720
Armando J. Acosta, BBO # 648242
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

## INTRODUCTION

The plaintiff, Tremont Realty Capital, Inc. ("Tremont"), a Massachusetts corporation, has filed a complaint against the defendants, Pinnacle Development Group, LLC ("Pinnacle"), Adams Canyon Ranch, LLC ("ACR"), John Lang ("Lang"), and Michael Grady ("Grady"), (hereinafter collectively referred as "Defendants"), seeking damages for $830,000, alleging that such damages were caused by the breach of an agreement whereby Defendants granted Tremont the exclusive right to procure or arrange financing for Defendants' project in exchange for a brokerage fee. Defendants all have their principal places of business in Arizona, and are all residents of Arizona. In addition, Tremont operates a local office in Scottsdale, Arizona, the same office that generated the business relationship in question. Tremont bases jurisdiction within this Commonwealth over Defendants solely on diversity of citizenship of the parties. See Complaint, ¶ 7. As the plaintiff's Complaint has not alleged facts sufficient to justify this Court's jurisdiction over the defendants in this matter, Defendants Pinnacle, ACR, Grady, and Lang now file this motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), or in the alternative, a motion for transfer of venue pursuant to 28 U.S.C. § 1404(a).

## FACTUAL BACKGROUND

Defendants Grady and Lang, two individuals, are members in defendant Pinnacle, an Arizona limited liability company. See Affidavit of Michael Grady, ¶¶ 3, 5 (hereinafter "Grady Affidavit" or "¶ __"). Defendant ACR is also an Arizona limited liability company that was organized and is specifically being operated to oversee a major real estate development project located in southern California known as "The Ranch at Santa Paula." (¶¶ 4, 6-7). "The Ranch at Santa Paula" is a 4,100-acre mixed-use residential/recreational development, including a proposed private golf course (the

"Project"). (¶ 6). In mid-2003, ACR was looking for financing with specific terms and conditions in order to take the Project to the next level. (¶ 7)

In June, July, or early August of 2003, Grady was discussing the Project and the financing needed with his long-time friend, John Glasgow, CPA ("Glasgow"). (¶ 8). Glasgow indicated during his conversation with Grady that he "might have a source" located "right here in Scottsdale." (¶ 8). Glasgow's "source," which he shared with Grady, was a gentleman by the name of Russell Posorske ("Posorske"). (¶¶ 9-10). Grady had previously done some work with Posorske and an Arizona-based company called Fortis Advisors ("Fortis"), so Grady mentioned that he was familiar with him. (¶ 9).

Apparently, Glasgow, on his own accord, mentioned Grady and their conversation to Posorske, because Posorske, *from his Arizona office,* subsequently telephoned Grady, *in Arizona,* approximately two days later. (¶ 11). Posorske stated that he had decided to call Grady because Glasgow had "planted a seed in his ear" that Grady's real estate Project might need funding. (¶ 11). After receiving this telephone call, Posorske and Grady set up a meeting where they could meet face to face to discuss the Project. (¶ 12).

The initial meeting took place sometime in August 2003 at Defendants' offices located in Scottsdale, AZ, between Posorske, Grady, Lang, and one Greg Boyd, ACR's project director. (¶ 13). Grady and Lang explained the Project and its financing needs in detail but, at the time of the initial meeting, they were both under the impression that Posorske was still affiliated with Fortis, and that he still had significant Wall Street contacts. (¶ 14). It was during this meeting that Grady and Lang shared ACR's financial needs and set forth its specific financing requirements, as delineated in ¶ 7 of the Grady Affidavit. (¶ 15).

Later, Posorske and Grady had a second meeting in Grady's Arizona office where Posorske, for the first time, shared that he had become affiliated with a company called "Tremont Realty Capital," and that Tremont was a source of capital for real estate

projects throughout the United States. (¶ 16). Posorske stated that Tremont had an office in Scottsdale, Arizona, and that he was the Senior Director of that office for the whole western United States region. (¶ 17). He also indicated that Tremont wanted "to do the deal" relative to financing the Project. (¶ 16).

At all times relevant to this matter, after they learned of Posorske's affiliation with Tremont, Grady and Lang assumed that Posorske was an authoritative spokesman for Tremont because he was listed on Tremont's website as being a "Senior Director," and because his business card and his verbal statements were to the same effect. (¶ 18). Before entering into any type of contractual relationship with Tremont, Grady and Posorske had many more back-and-forth communications (including exchanging e-mails) to discuss and negotiate the terms of an agreement. (¶ 19). After being advised by Posorske that Tremont felt that it could find the specific financing that ACR was seeking for the Project, ACR, through its duly authorized agent (Lang), executed the Agreement with Tremont on September 4, 2003. (¶ 21).

Significantly, *at no time* did Grady, Lang, or any other representative of the defendant companies, *initiate or receive* any telephone calls or e-mails, to or from Tremont's Boston-based office, in order to negotiate the terms of the Agreement. (¶ 22). In fact, all of the terms and conditions, which ultimately led to the formation of the Agreement between ACR and Tremont were discussed and negotiated in Arizona by Grady and Lang (on behalf of ACR) and by Posorske (on behalf of Tremont). (¶ 23). Defendants' only contact with Massachusetts was *in response* to a few telephone calls and e-mails from Tremont's Boston-based office, and *only after* the Agreement had already been executed. (¶ 25).

It is also important to point out, however, that *at no time* did Grady, Lang, or any other representative of the defendant companies, *initiate* any telephone calls or e-mails to Tremont's Boston-based office, even after the execution of the Agreement. (¶ 25). In

-3-

fact, Posorske handled the bulk of the details of the financing with Tremont's Boston-based office, as well as with Fidelity Management & Research Co. ("Fidelity"), a Massachusetts-based company.  (¶¶ 24, 26).  Also important is the fact that Defendants were specifically solicited by Tremont, through its agent in Arizona, as potential clients, and it was Tremont, through its Senior Director (Posorske), who made the initial solicitation in Arizona to propose a working relationship with Defendants.  (¶ 28).  Thus, the facts clearly reflect that at no time during Defendants' dealings with Tremont, or its Arizona-based agent, did any of the Defendants ever avail themselves, individually or jointly with others, of the privilege of transacting business in the Commonwealth of Massachusetts.  (¶¶ 27, 29-31).

Thus, all of the pertinent witnesses in this matter are residents of Arizona: (a) Defendant Lang; (b) Defendant Grady; (c) Defendant Pinnacle; (d) Defendant ACR; (e) Posorske, who represented himself to be the Senior Director of Tremont; (f) Glasgow; (g) Boyd; and (h) all of the brokers and agents, with regard to the financing that ACR eventually entered into with another company, are residents of either Arizona or California.  (¶ 37).

## STANDARD OF REVIEW

The standard by which the Court is required to review a party's motion to dismiss a complaint for lack of jurisdiction is well settled.  When a defendant contests personal jurisdiction, the plaintiff has the burden of proof to show that jurisdiction over the defendant is permitted.  See Jana Brands, Inc. v. NexiFM, Inc., 2003 U.S. Dist. LEXIS 862 at *3, 2003 WL 164251 (D. Mass. Jan. 23, 2003), citing Landmark Bank v. Machera, 736 F. Supp. 375, 380 (D. Mass. 1990).  The plaintiff must make a *prima facie* case for asserting personal jurisdiction over defendants by going beyond the pleadings and providing affirmative proof.  See Jana Brands, at *3, quoting Chlebda v. H.E. Fortna and Brother, Inc., 609 F.2d 1022, 1024 (1st Cir. 1979).  The district court, when considering

-4-

a motion to dismiss for lack of personal jurisdiction may go beyond the "four corners of the pleadings," (Milford Power, Ltd. Partnership by Milford Power Assoc., Inc. v. New England Power Co., 918 F.Supp. 471, 478 (D. Mass. 1996)), and must determine only whether the plaintiff has proffered evidence that, "if credited, is enough to support findings of all facts essential" to make a showing that personal jurisdiction exists. Champion Exposition Services, Inc. v. Hi-Tech Electric, LLC, 273 F.Supp. 2d 172, 174 n.1 (D. Mass. 2003), citing Foster-Miller, Inc. v. Babcock & Wilcox, Canada, 46 F.3d 138, 145 (1st Cir. 1995).

The district court "presiding over a case in which subject matter jurisdiction is premised on diversity of citizenship of the parties must apply the law of the forum state to determine whether personal jurisdiction over the nonresident party is appropriate." Champion Expo., 273 F.Supp. 2d at 175, citing Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). In Massachusetts, "personal jurisdiction over a nonresident defendant is constrained both by the long-arm statute and the Due Process Clause of the Fourteenth Amendment." Lyle Richards Int'l., Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997), citing Ticketmaster-New York, Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994).

In addition, to determine whether jurisdiction is proper under the constitutional requirements, the court must determine whether the jurisdiction is specific or general. See United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Jurisdiction as to an out-of-state defendant is *specific* when there exists a "demonstrable nexus" between the plaintiff's claim and the defendant's contacts with the forum state, and is considered *general* when no such nexus exists, but the defendant's contacts with the forum state are "continuous and systematic." Champion Expo., 273 F.Supp. 2d at 175. In the instant matter, Tremont has failed, pursuant to M.G.L. c. 223A, § 3, to allege any showing that Defendants: use or possess real property in

-5-

Massachusetts; have supplied services in Massachusetts; have caused a tortious injury by an act or omission in Massachusetts; or regularly transact or solicit business in Massachusetts. Thus, because of Tremont's failure to make a showing of any type of systematic or continuous activity on the part of Defendants in Massachusetts to warrant general jurisdiction, Tremont must demonstrate that jurisdiction is proper based on specific jurisdiction.

## ARGUMENTS

I. **WHERE THE SOLE BASIS FOR JURISDICTION IN TREMONT'S COMPLAINT OVER THE OUT-OF-STATE DEFENDANTS IS THAT DEFENDANTS HAD SEVERAL LONG-DISTANCE TELEPHONE CONVERSATIONS INITIATED BY PLAINTIFF IN MASSACHUSETTS, BOTH THE STATUTORY REQUIREMENTS FOR LONG-ARM JURISDICTION AND THE CONSTITUTIONAL DUE PROCESS REQUIREMENTS ARE NOT MET, AND THUS, THIS COURT MAY NOT EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS.**

The Massachusetts long-arm statute establishes jurisdiction when the claim arises from a natural or legal person's "transacting any business in this commonwealth." Champion Expo., 273 F.Supp. 2d at 174, quoting M.G.L. c. 223A, § 3(a).[1] Mass. Gen. Laws c. 223A, §3(a) "itself requires a two-part analysis: (1) did the defendants engage in any business in Massachusetts, and if so, (2) did the plaintiff's cause of action *arise out of* that business?" Morse v. Walt Disney World Co., 675 F.Supp. 42, 43 (D. Mass. 1987) [emphasis added]; see also, Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). "Only when both questions are answered affirmatively may a Court exercise jurisdiction over a given defendant." Palandjian v. Pahlavi, 586 F.Supp. 671, 674 (D. Mass. 1984).

---

[1] M.G.L. c. 223A, § 3 "Personal Jurisdiction Based Upon Acts or Conduct Within Commonwealth" states, in pertinent part:

> A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's
> (a) transacting any business in this commonwealth;...

A.   TREMONT HAS FAILED TO SHOW THAT DEFENDANTS' FEW LONG-DISTANCE TELEPHONE CALLS TO MASSACHUSETTS, AFTER THE AGREEMENT HAD ALREADY BEEN EXECUTED, MEET THE DEFINITION OF "TRANSACTING ANY BUSINESS" IN MASSACHUSETTS.

The analysis to determine personal jurisdiction is "*specific to the facts presented* [and under] section 3(a) ..., [and] the inquiry requires the court to *focus on the quality* as well as the quantity of the nonresident's contacts with Massachusetts." Aub v. Technicolor Entertainment Services, 224 F.Supp. 2d 371, 373 (D.Mass. 2002) [emphasis added]. The First Circuit has stated that the "'transacting [any] business' test under section 3(a) is designed to identify deliberate, as distinguished from fortuitous contacts with the forum by the nonresident party." Lyle Richards, 132 F.3d at 112. "Often, the 'transacting business' test is importantly informed by ascertaining *whether the nonresident party initiated or solicited* the business transaction in Massachusetts." Id. at 113 [emphasis added]. That is not the case here. (¶¶ 11, 21, 24-28).

While it is true that the "transacting business" requirement is to be broadly construed, nevertheless, this requirement is "not without some bite." Nova Biomedical Corp. v. Moller, 629 F.2d 190, 194 (1st Cir. 1980). The test focuses on "whether the defendant attempted to participate in the Commonwealth's economic life." United Elec. Workers, 960 F.2d at 1087. See also, Whittaker Corp. v. United Aircraft Corp., 482 F.2d 1079, 1084 (1st Cir. 1973) (where the court upheld jurisdiction over only one of three defendants who had contracted with a Massachusetts seller to purchase materials, because only that defendant had, in addition to entering into the contract, solicited, regularly visited, supervised, and communicated with the plaintiff, and thus only that defendant "participat[ed] in the economic life of Massachusetts"). None of these extra Whittaker factors are present in the instant matter. (¶¶ 24-29).

In the instant matter, Tremont's jurisdictional claims rest solely on the fact that the Defendants *responded* to a few telephone calls and e-mails to plaintiff in

Massachusetts *after* the Agreement had already been executed. (¶¶ 25, 26). In <u>Jana Brands</u>, jurisdiction in the United States District Court for the District of Massachusetts was denied because the Court found that all relevant facts occurred outside of Massachusetts. <u>See</u> 2003 U.S. Dist. LEXIS 862 at *7. The Court found it significant that the defendants' agent initially contacted the plaintiff in its Washington office, and *not* its Massachusetts office, and began negotiations there, and plaintiff notably had defendants' broker send credit information to the plaintiff's Washington office. <u>See</u> <u>id.</u>

Similar to <u>Jana Brands</u>, in the instant matter, it was Posorske, on behalf of Tremont, who first solicited Defendants' business *in Arizona.* (¶ 11). All negotiations took place in Arizona. (¶¶ 19, 23). The Agreement was executed in Arizona, and Defendants' only non-Arizona contact was to respond to a few long-distance telephone calls and e-mails *initiated by Tremont's Boston-based office*, and **only** **after** the Agreement had already been executed. (¶¶ 21, 25). Defendants never visited Massachusetts during the course of the Agreement negotiations (¶ 29), nor was there any suggestion that Massachusetts law would govern the Agreement should a dispute arise. <u>Compare</u> <u>Champion Expo.</u>, 273 F.Supp. 2d at 178 (where the Court stated that the inclusion in the agreement of a clause designating Massachusetts law as the governing law for the contract, along with other contacts, rendered foreseeable the possibility that the defendant would be haled into a Massachusetts court). In addition, there was a complete lack of any other in-state considerations, such the generation of additional business by Defendants in Massachusetts. (¶¶ 24, 30, 31). Therefore, even under a broad construction of "transacting any business," Defendants' conduct falls far short of engaging in any business activities in Massachusetts.

B.    THERE IS NO CONTINUOUS AND SYSTEMATIC ACTIVITY BY
      DEFENDANTS IN MASSACHUSETTS TO WARRANT GENERAL
      JURISDICTION, AND LIKEWISE, SPECIFIC JURISDICTION CAN NOT BE
      FOUND WHERE TREMONT'S CAUSE OF ACTION DOES NOT DIRECTLY
      ARISE OUT OF DEFENDANTS' IN-STATE CONTACTS.

If the Court finds that an out-of-state defendant did engage in business

transactions in Massachusetts, the question then becomes "whether the plaintiff's claims

arise from or relate to the defendants' contacts with Massachusetts, (*citation omitted*),

'which resulted from an affirmative, intentional act of the defendant, such that it is fair

and reasonable to require the defendant to come into the State to defend the action.'"

Jana Brands, 2003 U.S. Dist. LEXIS 862 at *5, quoting Good Hope Industries, Inc. v.

Ryder Scott Co., 378 Mass. 1, 7 (1979).  The First Circuit has described this

constitutional analysis for specific jurisdiction as a "tripartite analysis," where plaintiff

must demonstrate

> (1) that its claims relates to or arises out of [defendants'] contacts with
> Massachusetts, (2) that those contacts constitute purposeful availment of the
> benefits and protections afforded by Massachusetts law and, (3) that the
> exercise of jurisdiction is reasonable in light of a number of factors that touch
> upon fundamental fairness.

First Act, Inc. v. Brook Mays Music Co., 311 F.Supp.2d 258, 260 (D.Mass. 2004), citing

Phillips Exeter Academy v. Howard Phillips Fund. Inc., 196 F.3d 284, 288 (1st Cir. 1999).

See also, Barrett v. Lombardi, 239 F.3d 23, 26 (1st. Cir. 2001); Champion Expo., 273

F.Supp. 2d at 177; United Electrical, 960 F.2d at 1089.

1.    Tremont's claims contained in its Complaint did not arise out of
      Defendants' *responses* to a few telephone calls and e-mails to
      plaintiff in Massachusetts after the Agreement had been executed.

In order for a plaintiff's action to "arise out of" the defendants' in state activity, the

defendants' in-state conduct must form a material element in the proof of the plaintiff's

case.  See Marino v. Hyatt Corp., 793 F.2d 427 (1st Cir. 1986).  "In contract cases, a

court charged with determining the existence *vel non* of personal jurisdiction must look

to the elements of the cause of action and *ask whether the defendant's contacts with the*

*forum were instrumental either in the formation of the contract or in its breach.*" <u>Champion</u>

<u>Expo.</u>, 273 F.Supp. 2d at 177, <u>citing</u> <u>Phillips Exeter Acad.</u>, 196 F.3d at 289 [emphasis

added]. However, the mere fact that a plaintiff and a defendant had a written contract

does not suffice. "[R]ather, 'prior negotiations and contemplated future consequences,

along with the terms of the contract and the parties' actual course of dealing ... must be

evaluated in determining whether the defendant purposefully established minimum

contacts within the forum.' " <u>Id.</u> at 177, <u>quoting</u> <u>Burger King Corp. v. Rudzewicz</u>, 471

U.S. 462, 479, 105 S.Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985). <u>See also</u>, <u>Bond Leather</u>

<u>Co., Inc. v. Q.T. Shoe Mfg. Co.</u>, 764 F.2d 928, 933 (1st Cir. 1985) (stating that "the fact

that a nonresident enters into a single commercial contract with a resident of the forum

state is not necessarily sufficient to meet the constitutional minimum for jurisdiction").

In the instant matter, Tremont's claims do not "arise out of" Defendants' few

telephone calls to Tremont in Massachusetts *after* the Agreement had already been

executed *in Arizona.* (¶¶ 21, 25). All of the negotiations for the terms of the Agreement

took place in Arizona between Defendants and Tremont's Arizona-based agent, Posorske

(¶ 23), and in fact, Posorske handled the bulk of the negotiations of the financing

package between Tremont and Fidelity. (¶ 26). All of Tremont's claims arise out of an

alleged breach of the Agreement. Assuming, *arguendo,* that Defendants did breach the

Agreement, that breach would have occurred as a result of Defendants negotiating with

companies located *outside* of Massachusetts, and thus, all pertinent events to this action

would have occurred outside of Massachusetts: (i) the negotiations of the terms of the

Agreement; (ii) the execution of the Agreement; and (iii) the alleged breach of the

Agreement.

In addition, Tremont is a national company that does business in Boston, New

York City, Chicago, Annapolis, Scottsdale (AZ), and Los Angeles. Tremont could have

gone to anywhere in the country to broker a financing package for Defendants, but

instead, it unilaterally chose Fidelity, another Massachusetts company. At no time did Defendants request that Tremont use another Massachusetts company as its source of financing, and in fact, Posorske was attempting to contact lenders in Texas, NYC, and California before deciding on Fidelity. (¶¶ 24, 26). Tremont's extra-contractual activities, unilaterally undertaken in Massachusetts to solicit Fidelity, were extraneous to the formation of the Agreement, and thus, those activities did not constitute a "but for" cause for the alleged breach of contract. See, e.g., Lyle Richards, 132 F.3d at 114 (discussing the "but for" causation test arrived at by the SJC in Tatro, 416 Mass. at 770, as it relates to torts growing out of contractual relationships). Tremont's claims did not "arise out of" Defendants' Massachusetts activities because Defendants had no such activities. A few long-distance telephone calls by Defendants to Massachusetts had nothing to do with either the formation of the Agreement or Tremont's alleged breach of contract claims.

2. **Defendants' few long-distance communications with plaintiff's representatives, _after the Agreement had been executed_, do not rise to the level of purposeful availment of the privilege of conducting business in Massachusetts, and therefore, there was no reasonable expectation by Defendants of being haled into court in Massachusetts.**

The Fourteenth Amendment requires "in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Jana Brands, 2003 U.S. Dist. LEXIS 862 at *5, quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L. Ed. 2d 1283 (1958). "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Champion Expo., 273 F.Supp. 2d at 178, quoting Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 716 (1st Cir. 1996). Similarly, the Massachusetts Supreme Judicial Court ("SJC") has distinguished cases in which a nonresident's contacts are "random or isolated events" from cases in which the contacts are "part of a

-11-

larger systematic effort on [the nonresident's] part to obtain business from Massachusetts businesses and residents." <u>Aub</u>, 224 F.Supp. 2d at 373, <u>quoting</u> <u>Tatro</u>, 416 Mass. at 769.

It cannot be said, based upon the facts in this case as set forth in detail above, that Defendants' contacts with Massachusetts are such that it should have reasonably anticipated being haled into court here. <u>See</u> <u>Nowak</u>, 94 F.3d at 716, <u>citing</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980). In <u>Lyle Richards</u>, 132 F.3d at 113, the First Circuit held that the forwarding of purchase orders to Massachusetts, as well as communications with plaintiff 2-3 times per week regarding on-going contract performance, were purely incidental contacts insufficient to support an assertion of personal jurisdiction over defendant. Additionally, <u>Jana Brands</u>, 2003 U.S. Dist. LEXIS 862 at *6, held that the telephone conversations that defendants' agent had with plaintiff's president while the latter was in Massachusetts, and defendant's subsequent calls concerning payment, cannot be construed as affirmative acts whereby defendants availed themselves of the privilege of conducting activities in Massachusetts. Further, <u>Aub</u>, 224 F.Supp. 2d at 374, ordered that the "fact that there were long-distance communications between the parties by mail and telephone is not enough to justify the conclusion that [business was transacted] in Massachusetts." Because the alleged Massachusetts activities in the instant matter do not rise qualitatively to the level of in-state contacts as presented in <u>Lyle Richards</u>, <u>Jana Brands</u>, and <u>Aub</u>, this Court can not find personal jurisdiction over Defendants.

In addition, the First Circuit has held that "the fact that a nonresident *enters into a single commercial contract* with a resident of the forum state *is not necessarily sufficient to meet the constitutional minimum* for jurisdiction." <u>Bond Leather Co.</u>, 764 F.2d at 933 [emphasis added]. This District Court has also stated that it is important to delve into the contractual relationship of the parties, noting that when a non-resident party simply

purchases goods or services from Massachusetts residents (as is the case in the instant matter), Massachusetts courts are somewhat less inclined to find that the party is subject to personal jurisdiction here. See Aub, 224 F.Supp. 2d at 373-374. In making this statement, this Court has looked to the SJC, which has noted more than once that § 3(a) should not be interpreted to confer jurisdiction over all purchasers of Massachusetts products and services because such a broad application could produce "the unwanted result of discouraging foreign purchasers from dealing with resident sellers for fear of having to engage in litigation in distant courts." Id. at 374, quoting Good Hope, 378 Mass. at 9. See also New Hampshire Ins. Guar. Ass'n. v. Markem Corp., 424 Mass. 344, 350 (1997) (where the SJC noted that too broad an interpretation of § 3(a) would have the effect of discouraging out-of-state buyers from dealing with Massachusetts suppliers); Nichols Assocs., Inc. v. Starr, 4 Mass. App. Ct. 91 (1976) (no significant involvement in commerce of Massachusetts, and thus no personal jurisdiction, where nonresident defendant's "contact [was] limited to the . . . acceptance of services which the plaintiff simply chose to perform in Massachusetts").

Indeed, in the instant action, Defendants were essentially purchasing Tremont's services, and not selling their own product or service. It is of utmost important to point out that it was Tremont that first solicited Defendants through its Arizona-based agent to sell its services, and not the other way around. (¶ 28). Defendants have made no systematic effort to obtain Massachusetts business, before or after the execution of the Agreement. (¶ 31). In addition, Defendants at not time requested that Tremont specifically obtain the financing from a Massachusetts-based company, and in fact, Defendants did not know that Tremont would solicit Fidelity to provide the financing. (¶ 24). Defendants' few, incidental contacts with Massachusetts were the result of Tremont's unilateral solicitation of Fidelity, and thus Defendants could not have foreseen being haled into a Massachusetts court when it first entered the Agreement.

-13-

Moreover, no aspect of Defendants' dealings with Tremont has resulted in any Defendants having any significant or substantial contact in order to avail themselves of the privilege of doing business with anyone in the state of Massachusetts: (a) leading up to the Agreement, none of the defendants ever negotiated deal points over the telephone or by e-mail with anyone in Massachusetts; (b) no Defendant, nor their representatives, has ever had any face-to-face business meetings with representatives of Tremont in the state of Massachusetts; (c) all the original drawings, models, and plans for the Project are in Arizona; (d) the execution of the Agreement took place in Arizona; (e) the real property for which the financing was needed, which is the subject of the Agreement, is located in the state of California; (f) Posorske, Tremont's Senior Director, is a resident of the state of Arizona, and solicited Defendants' business on behalf of Tremont in Arizona; (g) all negotiations leading up to, and including the execution of the Agreement with Tremont, took place in Arizona; (h) ACR's development offices, as well as the Project's key consultants are all located in California; and (i) the tax returns for ACR and Pinnacle are all filed in the states of Arizona and California.  (¶ 30).

### 3.    Jurisdiction over Defendants, as this conclusion would offend the traditional notions of fair play and substantial justice.

Finally, the Court must also find that the assertion of personal jurisdiction over defendants would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 320, 66 S. Ct. 154, 160 (1945).  The courts have employed the "Gestalt" factors[2] in the analysis of whether jurisdiction would offend these traditional notions.  In addition, the burden of travel from Arizona to

---

[2] These so-called Gestalt factors consist of:

> (1) the defendants' burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Champion Exposition, 273 F.Supp. 2d at 178, citing Nowak, 94 F.3d at 717.

Massachusetts, as well as the inconvenience caused thereby, will be entitled to "substantial weight in calibrating the jurisdictional scales." Ticketmaster-N.Y., 26 F.3d at 210. "Indeed, the [Supreme Court] has stated that this element, alone among the gestalt factors, is 'always a primary concern'." Id. quoting World-Wide Volkswagen, 444 U.S. at 292.

Although Massachusetts may have an interest in protecting its citizens, this Court must not lose sight of the fact that it was Tremont that first solicited Defendants through its Arizona-based agent. (¶ 28). The judicial system's interest in obtaining the most effective resolution of the controversy is better met by enabling the overwhelming number of witnesses located in Arizona to testify live at the trial of this action. (¶ 37). The convenience to Tremont should not outweigh the substantial injustice to Defendants if Defendants cannot compel disinterested witnesses to travel to Massachusetts to testify on its behalf, especially if none of Tremonts' essential witnesses are residents of Massachusetts. (¶ 37).

There will be a significant, substantial burden on Defendants, and many of the other key, material witnesses, to appear in Massachusetts: (a) because Tremont maintains an office in Scottsdale, AZ, it is a resident of Arizona; (b) Posorske, who represented himself to be the Senior Director of Tremont, is also a resident of Arizona and is a key, material witness in this matter; (c) Glasgow is a resident of Arizona, and while he is a disinterested witness, he is nevertheless an important one as he may be able to testify that none of the defendants ever solicited any business from Tremont in Massachusetts; (d) Boyd is a resident of Arizona and is an essential witness as he is ACR's project director; (e) all of the brokers and agents (with regard to the financing deal that ACR eventually entered into with another company) are residents of either Arizona or California; and (f) all Defendants, including their employees and agents, are residents of Arizona. (¶ 37). Thus, it would work an extreme hardship, financially as well as

logistically, if Defendants are obligated to continue to defend these unfounded claims alleged by Tremont in a Massachusetts-based court. (¶ 32).

In addition, all of the pertinent events to this action would have occurred outside of Massachusetts, assuming, *arguendo*, that Defendants did actually breach the Agreement: (i) the negotiations of the terms of the Agreement took place in Arizona; (ii) the execution of the Agreement also took place in Arizona; and (iii) the alleged breach of the Agreement would have taken place in Arizona.  Furthermore, an exercise of personal jurisdiction would mean that any plaintiff could, simply by negotiating terms of an agreement to sell or purchase a service or product, force a defendant to expose himself to jurisdiction in Massachusetts.  This would set a bad precedent that could have a chilling effect on the Massachusetts economy, and would offend the traditional notions of fair play and substantial justice.

**II.    IN THE ALTERNATIVE, SHOULD THIS COURT DETERMINE THAT PERSONAL JURISDICTION OVER THE OUT-OF-STATE DEFENDANTS IS WARRANTED, DEFENDANTS' MOTION FOR TRANSFER OF VENUE, PURSUANT TO 28 U.S.C. § 1404(A), SHOULD BE GRANTED FOR THE CONVENIENCE OF PARTIES AND WITNESSES, AND IN THE INTEREST OF JUSTICE.**

   A.    BECAUSE THE MAJORITY OF THE MATERIAL WITNESSES IN THIS CASE ARE RESIDENTS OF ARIZONA, INCLUDING THOSE OF TREMONT AND DEFENDANTS, VENUE IN THE DISTRICT OF ARIZONA IS THE MORE APPROPRIATE FORUM FOR THIS MATTER TO BE HEARD.

The transfer of venue statute, 28 U.S.C. § 1404(a) provides that

[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Champion Expo., 273 F.Supp. 2d at 179, quoting 28 U.S.C. § 1404(a).  See also, New Medico Assoc., Inc. v. Kleinhenz, 750 F. Supp. 1145 (D. Mass. 1990).  The First Circuit has recently stated that § 1404(a) is a codification of the doctrine of *forum non conveniens*.  Id. at 179, quoting Albion  v. YMCA Camp Letts, 171 F.3d 1, 2 n.3 (1st Cir. 1999).  The decision to transfer a case to a more convenient forum is a matter within the

-16-

discretion of the district court. See Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir.

2000); see also, Princess House, Inc. v. Lindsey, 136 F.R.D. 16, 18 (D. Mass. 1991). "The

defendant must bear the burden of proving both the availability of an adequate

alternative forum and that considerations of convenience and judicial efficiency strongly

favor litigating the claim in the alternative forum." Champion Expo., at 180, quoting

Nowak, 94 F.3d at 719. The decision requires the balancing of several factors; however,

the weight accorded to the plaintiff's choice of forum depends upon the circumstances of

each case. See Brant Point Corporation v. Poetzsch, 671 F.Supp. 2, 5 (D. Mass. 1987).

Probably the most important factor, and the factor most frequently mentioned in

reported decisions concerning motions to transfer venue under 28 U.S.C. § 1404(a), is

the convenience of key witnesses. See Brant Point, 671 F.Supp. at 3, quoting 15 Wright,

Miller, & Cooper, Federal Practice and Procedure, 2d § 3851 at 415 (1986)). "In analyzing

the convenience of the witnesses, the court must consider not only the number of

potential witnesses located in the transferor and transferee districts, but also the nature

and quality of their testimony and whether they can be compelled to testify." Id. at 3-4

(citation omitted). Another relevant consideration in analyzing the convenience of

witnesses is the "cost of obtaining the presence of the witnesses." Princess House, 136

F.R.D. at 19. It is well settled that a court should procure the live testimony of material,

non-party witnesses at trial rather than forcing a party to rely upon deposition evidence.

See id. at 20. This live testimony is even more important when the "qualitative value" of

the witness's testimony is high. See Brant Point, 671 F.Supp. at 4.

There are a number of non-party witnesses located in the state of Arizona whose

testimony will be critical in the trial of this action. The convenience of these witnesses

weighs heavily in favor of the transfer of this action to the U.S. District Court for the

District of Arizona (Phoenix Division). Specifically, crucial to the defense of this action

are the following witnesses: (i) Posorske, who represented himself to be the Senior

-17-

Director of Tremont, is a resident of Arizona, and his testimony as a material witness is important as he can testify to the events that took place in Arizona leading up to the contractual relationship between Defendants and Tremont; (ii) Glasgow is also a resident of Arizona, and while he is a disinterested witness, he remains material as he may be able to testify that it was he who first called Posorske, and Posorske then called Grady; (iii) Boyd is a resident of Arizona and his testimony as a potential witness is important, as he can testify that the initial meeting between Posorske and Defendants took place in Arizona, as well as to the substance of the discussion at the initial meeting. (¶ 37(a)-(d)).

Some additional and essential fact witnesses include all of the brokers and agents in regard to the financing that ACR eventually entered into with another lender, who are residents of either Arizona or California. (¶ 37(e)). In addition, all Defendants, including Grady and Lang, are also residents of Arizona. (¶ 37(f)). Moreover, Tremont cannot possibly show that it will be greatly inconvenienced, as even its own key witness (Posorske) is a resident of Arizona. (¶¶ 9, 30(f)).

Here, Defendants' sole contacts with Massachusetts were a few long-distance telephone calls to Tremont's representative *after* the Agreement had been executed in Arizona. (¶ 25). The negotiations to the Agreement took place in Arizona with a resident of Arizona and thus, Tremont's choice of forum should receive no more than equal consideration along with the other factors to be considered under § 1404. The defense of this action will be significantly and adversely affected should this matter remain in this Court. Defendants will be forced to put on a significant portion of its defense through deposition testimony, because the distance between Massachusetts and Arizona makes it *extremely unlikely* that non-party, disinterested but material, witnesses will be available to testify in Massachusetts at trial.

The reverse is not true for Tremont. It has an office located in Arizona, and its Senior Director (Posorske), who is the only person from Tremont who ever negotiated the

Agreement with Defendants, also resides in Arizona. (¶¶ 9, 17). Tremont has accordingly availed itself of the right to do business in the state of Arizona, and not the other way around. All Defendants and their representatives are residents of Arizona. Accordingly, all principals in the case, as well as key witnesses (or at least the overwhelming majority of them), are all located in Arizona, and not in Massachusetts. (¶ 37). Due to the significant distance between Arizona and Massachusetts, a significant burden would be placed upon Defendants should this matter remain in Massachusetts, while Tremont cannot fairly argue that it would be inconvenienced should this action be transferred to Arizona.

B.    IN THE INTEREST OF JUSTICE, THIS MATTER MUST BE TRANSFERRED TO DISTRICT OF ARIZONA.

The last consideration as part of a § 1404(a) analysis is "in the interest of justice." This factor would appear to be hard to define and, indeed, one judge in this district has described it as "a resounding phrase of celestial vacuity." New Medico, 750 F.Supp. at 1146. In attempting to attach some type of discernable standard to this factor, however, the New Medico Court held that it should "derive its content from the circumstances of each case, and should include, at least, the facilitation of a rational disposition of the controversy." Id. In New Medico, the court ruled that a transfer of venue to Illinois was proper because the corporeal absence of witnesses from the trial is likely to prejudice the defendants' case. Id. Similarly, in the case at hand, maintaining this action in Massachusetts would, in all likelihood, result in the absence of a number of disinterested, but nevertheless key fact witnesses for Defendants. This is a significant action in which Tremont has alleged no less $850,000 in damages. The physical absence of key, independent defense witnesses from trial would certainly prejudice Defendants. Therefore, in the interest of justice, this matter must be transferred to the District of Arizona (Phoenix Division).

## III.  CONCLUSION.

Tremont cannot set forth specific facts sufficient for this Court's exercise of personal jurisdiction over Defendants and thus, cannot meet its burden of proof. Defendants' isolated activities in Massachusetts fall short of "transacting business" in this state, and Tremont's lawsuit clearly does not "arise out of" Defendants' isolated contacts with persons in Massachusetts.  Thus, personal jurisdiction over Defendants is not warranted.  In the alternative, should this action remain in Massachusetts, it is unlikely that the disinterested, but nevertheless key fact witnesses, such as Glasgow, Boyd, or the agents and brokers in Arizona and California, will be available to testify live at trial.  The absence of these key witnesses at the trial of this action will have a devastating impact upon the defense, outweighing Tremont's slight inconvenience, if any, if this matter is not transferred to the District of Arizona.

WHEREFORE, for all of the foregoing reasons, Defendants Pinnacle, ACR, Lang, and Grady, respectfully request that their Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(2) be granted.  In the alternative that their Motion to Dismiss for lack of personal jurisdiction is not granted, Defendants respectfully request that their Motion for Transfer of Venue Pursuant to 28 U.S.C. § 1404(a) be granted.

Respectfully submitted,

CLARK, HUNT & EMBRY

William J. Hunt, BBO # 244720
Armando J. Acosta, BBO # 648242
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

Date CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail (by hand) on 10/15/04.

-20-