UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

FILED
CLERKS OFFICE
2004 OCT 15 P 3: 35

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| TREMONT REALTY CAPITAL, INC., Plaintiff, | |
| v. | DOCKET NO. 04-11853-RGS |
| PINNACLE GROUP, LLC, ADAMS CANYON RANCH, LLC, JOHN LANG, and MICHAEL GRADY, Defendants. | |

### AFFIDAVIT OF MICHAEL GRADY

I, MICHAEL GRADY, having been first duly sworn upon my oath, hereby depose and state as follows:

1. I am making this affidavit in support of Defendants' Motion to Dismiss for lack of personal jurisdiction, and/or in the alternative, a Motion for Transfer of Venue. It is for this purpose ONLY, and any statements contained herein should not be construed as a waiver of our challenge to personal jurisdiction over me, or any of the other defendants, by the United States District Court, District of Massachusetts.

2. I have personal knowledge of all matters that I testify to herein, unless I specifically represent that said matters are testified to "upon information and belief."

3. I am a member in a limited liability company known as Pinnacle Development Group, LLC ("Pinnacle"), which is an Arizona limited liability company. Pinnacle has not at any time, had any involvement in the matter at issue in this case.

4. Pinnacle Development Group Santa Paula, LLC ("PDG Santa Paula") is an Arizona limited liability company. PDG Santa Paula is a member and the manager of Adams Canyon Ranch, LLC ("ACR"), another Arizona limited liability company.

5. John Lang ("Lang") is a majority member with me in Pinnacle.

6. PDG Santa Paula and ACR are involved in a major real estate development project located in southern California known as "The Ranch at Santa Paula." It is a 4,100-acre mixed-use residential/recreational development, including a proposed private golf course (the "Project"). At the present time, the Project simply consists of raw land that is not yet entitled *i.e.*, has not obtained appropriate zoning as contemplated.

7. ACR was organized and is specifically being operated to oversee the acquisition and development of this Project in California. ACR needed financing for this Project in order to take the Project to the next level. ACR was looking for financing with the following terms:

(a) $16,500,000.00;

(b) four-year terms, non-recourse;

(c) provision for the completion of the design and entitlement of a proposed private golf course estate lot master planned community;

(d) total project size: 4,117 acres containing 400 residential home sites; and

(e) no continuing investment by ACR or PDG Santa Paula, or their principals, and the return of 100% of the owners' invested equity at the time of funding.

8. In June, July, or early August of 2003, I was discussing the Project and the financing needed with a long-time friend, John Glasgow, CPA ("Glasgow"). Glasgow indicated during this conversation that he "might have source" located "right here in Scottsdale."

9. Glasgow's "source," which he shared with me, was a gentleman by the name of Russell Posorske ("Posorske"). I immediately acknowledged that I knew Posorske, as I knew him to be a principal in a Scottsdale, Arizona-based company known as Fortis Advisors ("Fortis").

10. I had worked with Posorske and Fortis before, so I mentioned to Glasgow that I was familiar with Posorske, as well as with his company.

11. Upon information and belief, Glasgow had apparently mentioned my name to Posorske, because I subsequently received a telephone call from him approximately two days later. Posorske stated that he decided to call me because Glasgow had "planted a seed" in his ear that our real estate Project might need funding.

12. After receiving this telephone call, Posorske and I set up a meeting where we could meet face to face to discuss the Project, and so that Lang and I could explain the Project and its financing needs in detail.

13. The initial meeting took place sometime in August 2003 at defendants' offices located at 8145 N. 86th Place, Scottsdale, AZ. The meeting was between Posorske, Lang, myself, and Greg Boyd, the project director for ACR.

14. At the time of the initial meeting, Lang and I were under the belief that Posorske was still affiliated with Fortis, and still had significant Wall Street contacts.

15. Thus, Lang and I shared ACR's financial needs and set forth its specific financing requirements, as delineated in ¶ 7 above.

16. During our second face-to-face meeting, Posorske shared that he had become affiliated with a company called Tremont Realty Capital ("Tremont"), and that Tremont was a source of capital for real estate projects throughout the United States. He indicated that his company (Tremont) wanted "to do the deal" relative to financing the Project.

17. Posorske advised me that his office was located at 7526 East Camelback Road, Scottsdale, AZ 85251, and that the telephone was (480) 483-7373. In addition, Posorske represented himself to be the Senior Director of the western U.S. region.

18. At all times subsequent to our second meeting, Lang and I assumed (and we still have said impression), that Posorske was an authoritative spokesman for

Tremont because of his title.  <u>See</u> Copy of Posorske's business card, attached hereto as <u>Exhibit A</u>.

19.    Before entering into any type of contractual relationship with Tremont, I had many more communications with Posorske here in Arizona to discuss and negotiate the terms of an agreement, including exchanging e-mails back and forth. <u>See</u> Copies of e-mail messages to and from Posorske and defendants (evidencing the negotiations of the terms and conditions), attached hereto as <u>Exhibit B</u>.

20.    However, it became unclear to me whether Posorske was still affiliated with Fortis at the same time that he was an agent of Tremont, as some of his e-mails originated from a Fortis e-mail address, and some e-mails originated from a Tremont e-mail address.  <u>See</u> Copies of e-mail messages sent by Posorske to defendants (evidencing the two different e-mail addresses), attached hereto as <u>Exhibit C</u>.

21.    After being reassured by Posorske that Tremont felt that it could broker the financing which ACR was seeking for the Project (as set forth in ¶ 7 above), ACR, through its duly authorized agent (Lang), executed an agreement with Tremont on September 4, 2003 in defendants' offices in Scottsdale, Arizona.  <u>See</u> Mortgage Banking Agreement ("Agreement"), attached hereto as <u>Exhibit D</u>.

22.    ***At no time*** prior to the execution of the agreement did I, Lang, or any other representative of the defendant companies, ***initiate or receive*** any telephone calls or e-mails, to or from Tremont's Boston-based office.

23.    In fact, all of the terms and conditions, which ultimately led to the Agreement between ACR and Tremont, were discussed and negotiated in Arizona by Lang and me on behalf of ACR and by Posorske on behalf of Tremont.

24.    After the execution of the Agreement, I began working with Tremont here in Arizona to assist Posorske in putting together a financing request package.  At no time did I, or any other agent of the defendants, request that the financing come from a Massachusetts-based company.  In fact, Posorske informed me that he and Tremont

would be talking to 15-20 different lenders throughout the United States that could provide the financing needed.

25. Subsequent to entering into the Agreement, I received a few telephone calls and e-mails from Tremont's office located in Massachusetts. While I **responded** to each of those telephone calls and/or e-mails to Tremont's Boston-based office, it is important to note that **at no time** did I, Lang, or any other representative of the defendant companies, **initiate** any telephone calls or e-mails to Tremont's Boston-based office.

26. Posorske handled the bulk of the negotiations and details of the financing with Tremont's Boston-based office, as well as with Fidelity Management & Research Co. See Copies of e-mails from Posorske to defendants (evidencing Posorske forwarding questions from the Boston-based companies) attached hereto as Exhibit E. In addition, Posorske initiated contacts with potential lenders in Texas, California, New York, and several other states.

27. Thus, the facts clearly reflect that at no time during our dealings with Tremont, or its Arizona-based director, did I, Lang, ACR, and/or Pinnacle ever avail ourselves, individually or jointly with others, of the privilege of transacting business in the Commonwealth of Massachusetts.

28. In fact, all of the defendants were specifically solicited by Tremont, through its senior director in Arizona, as potential clients. As set forth in ¶ 11 above, Tremont, through its Senior Director (Posorske), made the solicitation here in Arizona to propose a working relationship with all defendants.

29. Neither I, Lang, nor anyone else on behalf of ACR or Pinnacle, has ever visited the Tremont offices in the state of Massachusetts, or otherwise ever acted in the state of Massachusetts relative to this matter.

30. In fact, no aspect of our dealings with Tremont has resulted in any of the defendants having any significant or substantial contact with anyone in the state of Massachusetts, or transacted any business in Massachusetts:

(a) leading up to the Agreement, none of the defendants ever negotiated deal points over the telephone or by e-mail with anyone in Massachusetts;

(b) we never had any face-to-face business meetings with representatives of Tremont in the state of Massachusetts;

(c) all the original drawings, models, and plans for the Project are in Arizona;

(d) the execution of the Agreement took place in Arizona;

(e) the real property for which the financing was needed, which is the subject of the Agreement, is located in the state of California;

(f) Posorske, Tremont's Senior Director, is a resident of the state of Arizona and solicited our business on behalf of Tremont in Arizona;

(g) all negotiations leading up to, and including the execution of the Agreement with Tremont, took place in Arizona;

(h) ACR's development offices, as well as the Project's key consultants are all located in California;

(i) the contract was signed in Arizona; and

(j) the tax returns for ACR and PDG Santa Paula are all filed in the states of Arizona and California.

31. Neither I, Lang, Pinnacle, nor ACR, have any other non-related business dealings, nor have we ever had any business dealings, in the state of Massachusetts. In fact, I have never even visited Massachusetts for personal reasons, while Lang was there for only 1 day over twenty years ago.

32. It would work an extreme hardship, financially as well as logistically, if any of the defendants are obligated to continue to defend these totally unfounded claims alleged against us in a Massachusetts-based court.

33. Not only would it require us to continue to retain local counsel in Massachusetts, but it would compel us to regularly have to travel all the way across the country to consult face-to-face with local counsel, attend significant hearings, and handle all of the other matters related to this litigation.

34. All defendants deny that the United States District Court for the District of Massachusetts (or, for that matter, any Massachusetts state court) has any basis to assert personal jurisdiction over any of the defendants in this case.

35. Moreover, it is our position that both the principles of equity and fairness, and the principles of law that have been developed around the concept of *forum non conveniens* (as explained to us by our legal counsel) certainly would dictate that the U.S. District Court for the District of Massachusetts is not the most convenient forum in which this matter should be heard.

36. In the alternative, this Court is requested to determine that the U.S. District Court for the District of Massachusetts is not the proper forum or venue in which this matter should be heard, and defendants thus request that it transfer venue of this matter to the United States District Court for the District of Arizona (Phoenix Division).

37. All of the pertinent witnesses in this case, including the representative of Tremont and all defendants, are residents of Arizona:

    (a) Tremont maintains an office in Scottsdale, AZ, and thus is a resident and an entity authorized to do business in Arizona;

    (b) Posorske, who represented himself to be the Senior Director of Tremont, is also a resident of Arizona, and his testimony as a potential witness is important, as he can testify to the events that took place in Arizona

leading up to the contractual relationship between defendants and Tremont;

(c) Glasgow is a resident of Arizona, and his testimony as a potential witness is important, as he can testify that his "source," as he believed, was also a resident of Arizona. Glasgow may also be able to testify that neither I, nor any of the other defendants, took the first step to solicit Posorske;

(d) Boyd is a resident of Arizona, and his testimony as a potential witness is important, as he can testify that the initial meeting between Posorske and defendants took place in Arizona, as well as to the substance of the discussion at the initial meeting;

(e) all of the brokers and agents (with regard to the financing deal that ACR eventually entered into with another company) are residents of either Arizona or California; and

(f) all defendants, including Lang and myself, are residents of Arizona.

38. Accordingly, I submit this Affidavit in support of our attorneys' request that this matter be promptly dismissed against all defendants on the basis of lack of personal jurisdiction by the U.S. District Court for the District of Massachusetts over any and all defendants, and/or in the alternative, transfer venue over this matter to the U.S. District Court for the District of Arizona (Phoenix Division).

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY this ___ day of October, 2004.

_____
MICHAEL GRADY

### CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail~~ (by hand) on 10/15/04.

-8-