## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TREMONT REALTY CAPITAL, INC., a Massachusetts Corporation,<br>     Plaintiff,<br><br>v.<br><br>PINNACLE GROUP, LLC, an Arizona limited liability company; ADAMS CANYON RANCH, LLC, an Arizona limited liability company, John Lang, an individual; and Michael Grady, an individual,<br>     Defendants,<br>and<br><br>_____<br><br>PINNACLE GROUP, LLC, an Arizona limited liability company; ADAMS CANYON RANCH, LLC, an Arizona limited liability company, John Lang, an individual; and Michael Grady, an individual,<br>     Counterclaimants,<br><br>v.<br><br>TREMONT REALTY CAPITAL, INC., a Massachusetts Corporation,<br>     Counter-Defendant. | **Case No. 04-11853-RGS**<br><br><br>**AMENDED ANSWER AND FIRST AMENDED COUNTERCLAIM** |

Defendants Pinnacle Group, LLC ("Pinnacle"), Adams Canyon Ranch, LLC ("Adams Canyon"), John Lang ("Lang"), and Michael Grady ("Grady") (Pinnacle, Adams Canyon, Lang and Grady all hereafter collectively referred to as "Defendants" or "Counterclaimants") deny all of the allegations set forth in all of the rhetorical paragraphs of Plaintiff's Complaint which are not specifically admitted by the Defendants herein. Defendants hereby answer, counterclaim, and otherwise respond to Plaintiff's Complaint in this matter as follows:[1]

---

[1] Paragraphs numbered 1-45 of the Answer relate to the correspondingly numbered paragraphs in Plaintiff's Complaint.

**AMENDED ANSWER**

1.    As to rhetorical paragraph 1 of Plaintiff's Complaint, Defendants admit

that the action which has been brought has been characterized by Plaintiff as one for

breach, unjust enrichment, fraud, and unfair and deceptive practices, and that

Plaintiff's action is alleged to be based upon an agreement entered into by Defendants

and Plaintiff; however, Defendants deny the remaining allegations of rhetorical

paragraph 1 of Plaintiff's Complaint.  Specifically, Defendants deny they were

obligated to pay a brokerage fee to Plaintiff in the sum of $830,000.00 (or any other

amount) in the event the Defendants "obtained financing from any source."

Defendants affirmatively allege that the brokerage fee was only due to Plaintiff, if at

all, in the event that Plaintiff or Defendants obtained financing for the project in a

specific amount and upon specific terms, which Defendants were seeking for this

specific real estate project (the "subject financing").  As of this date, Defendants have

yet to obtain such subject financing.

2.    Admitted.

3.    Admitted.

4.    Admitted.

5.    Admitted.

6.    Admitted.

7.    Defendants deny that this Court has jurisdiction over this action

pursuant to 28 U.S.C. §1332 because, based upon the compulsory Counterclaims

which Defendants have set forth herein below, and in Defendants' Third-Party

Complaint, a proper realignment of the parties in order to determine each party's

substantial interests in this matter evidences that complete diversity of jurisdiction as

required by 28 U.S.C. §1332 does not exist.  In addition, Defendants affirmatively

deny that the amount in controversy, to the extent that Plaintiff is entitled to any damages at all, does not exceed $75,000.00 and, according to 28 U.S.C. §1332(b), the costs of this action should be imposed upon Plaintiff by the Court.

8.    Defendants deny that venue in this Court is proper pursuant to 28 U.S.C. §1391(a) or otherwise for the reasons set forth in Defendants' Motion to Dismiss previously filed with this Court, all of the reasons set forth in said Motion to Dismiss hereby specifically incorporated by reference into this Answer as affirmative allegations as to the impropriety of venue in this District. Defendants affirmatively deny that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District of Massachusetts.

9.    Defendants admit that Tremont and the Defendants entered into a Mortgage Banking Agreement ("Agreement"). Defendants admit that said Agreement bears the type-written date of August 30, 2003, in the first paragraph thereof. Defendants are without sufficient information to form a belief as to the truth or untruth of the exact time in which the parties actually "entered" into said Agreement and accordingly, the allegation that the Agreement was entered into "on August 30, 2003" is hereby denied. Defendants admit that a part of the Agreement was annexed to Plaintiff's Complaint as Exhibit A. Defendants affirmatively deny that said Exhibit A constitutes all of said Agreement.

10.    Defendants admit that they negotiated the terms of the Agreement over a period of several months prior to entering into the Agreement. Defendants deny that the negotiations took place primarily during telephone calls between the Defendants and representatives of Tremont located in Boston, Massachusetts. Defendants deny the remaining allegations of rhetorical paragraph 10 of Plaintiff's Complaint. Defendants affirmatively allege that the negotiations primarily took place between

- 3 -

Plaintiff's principal (Russell Posorske) who was (and still is) a resident of the State of Arizona and Defendants at Defendants' offices in Arizona. In addition, Defendants allege that the communications, to the extent that they did involve representatives of Tremont via telephone who were located in Boston, Massachusetts, also involved, in almost every instance in those same phone calls, a representative of Tremont located in Phoenix, Arizona (*i.e.*, Russell Posorske).

11.    Defendants admit that the Agreement upon which Plaintiff has brought its lawsuit contains the quoted phrase however, Defendants deny the allegation of rhetorical paragraph 11 of Plaintiff's Complaint. Defendants allege that the Agreement speaks for itself and that the phrase "subject financing" as used in the Agreement had a specifically defined meaning to the parties.

12.    Defendants admit that the Agreement contains the language as alleged in rhetorical paragraph 12 of Plaintiff's Complaint; however Defendants deny that that said language, or any other language in the Agreement, entitles Plaintiff to the commission which Plaintiff is seeking in this litigation. Defendants allege that the Agreement speaks for itself. Defendants further allege that the Agreement, and specific terms set forth in said Agreement, must be placed, construed and interpreted in context. And further, Defendants affirmatively allege that the Agreement and the obligation to pay the fee relative thereto, was expressly conditioned upon Plaintiff's obtaining for Defendants the "subject financing." As of this date, the Defendants have never received the "subject financing" from any source whatsoever and no commission is accordingly due to Plaintiff.

13.    Defendants admit that Tremont's right to procure or arrange financing to the project was subject to the exception that if the Defendants obtained the subject financing from a source listed on Appendix 1 to the Agreement, Tremont would not be

- 4 -

entitled to payment of the brokerage commission in question but would only be entitled to payment of a break-up fee of $25,000.00. Defendants allege that the Agreement speaks for itself. Defendants further allege, however, that Tremont's exclusive right to procure the subject financing for the Project was also subject to the exception that Tremont would not be entitled to the commission unless it performed pursuant to the Agreement by providing Defendants with the "subject financing." Defendants have not yet received said "subject financing," and accordingly Tremont's failure to perform bars them from the right to recover either the commission amount or the break-up fee of $25,000.00 as set forth in the Agreement.

14.     Defendants admit that the sources listed in Appendix 1 to the Agreement are denominated as Funding America, Sion Holdings, and Old Standard Life. Defendants further allege that the Agreement and the exhibits thereto speak for themselves.

15.     Defendants admit that Tremont introduced the Project (as defined in paragraph eleven (11) of Plaintiff's Complaint) to Fidelity Management and Research Company ("Fidelity") as a potential funding source for the Project. Defendants deny that Fidelity at any time committed to provide the required subject financing for the Project. Moreover, Defendants affirmatively allege that Fidelity subsequently demanded additional conditions, including the requirement that Defendants acquire an additional 600 acre parcel of real estate not originally contemplated by the parties before Fidelity would provide the funding for the Project to Defendants. Accordingly, neither Fidelity (nor any other lending source) has ever provided, or has been prepared to provide, the "subject financing" to the Defendants and, accordingly, no commission has been earned or is otherwise due to Plaintiff relative to this matter.

16.     Defendants are without sufficient information to form a belief as to the

truth or untruth of the allegations set forth in rhetorical paragraph 16 of Plaintiff's

Complaint at this time and said allegations are accordingly denied.

17.    Defendants admit that the dealings with Fidelity ultimately got to a point

where Fidelity was apparently committed to provide certain financing to the Project

subject to the execution of "an appropriate financing agreement and related

documentation" as alleged by Plaintiff; however, Defendants deny the allegation of

rhetorical paragraph 17 of Plaintiff's Complaint.  Defendants further allege that the

proposed "appropriate financing agreement and related documentation" involved

Defendants' obligation to acquire an additional parcel of property adjacent to the

Project comprising approximately 600 additional acres, as well as imposing upon

Defendants certain other terms and conditions that were materially different from the

"subject financing" which Defendants had always been seeking relative to the Project.

Defendants affirmatively allege that neither Fidelity nor any other funding source has

ever committed to provide Defendants with the "subject financing" that Defendants

have been seeking relative to the Project and upon which the exclusivity provision of

the Agreement was based.

18.    Defendants deny that Defendants had retained counsel to assist in

negotiating and documenting the terms of a final financial agreement.  Defendants are

without sufficient information to form a belief as to the truth or untruth of the

remaining allegations set forth in rhetorical paragraph 18 of Plaintiff's Complaint at

this time and said allegations are accordingly denied.

19.    Denied.

20.    Admitted.

21.    Defendants admit that at the time they executed the Agreement with

Tremont, that Defendants were not engaged in discussions with any potential

financing sources other than those lenders named in Appendix 1 to the Agreement. At the time that the negotiations commenced between Defendants and Fidelity, Defendants were constantly speaking to brokers and other representatives of potential funding sources in an effort to obtain the "subject financing" for the Project.

22.     Defendants admit that they ultimately secured a form of financing for the Project from another lender and ceased all subsequent dealings with Fidelity and Tremont; however, Defendants deny the allegation of paragraph 22 of Plaintiff's Complaint. Defendants allege that they have, as of this date, still never secured the "subject financing" for the Project which Defendants have always sought and upon which the Agreement with Tremont was predicated.

23.     Defendants admit that they received a copy of the correspondence dated July 26, 2004 from Tremont as set forth as Exhibit C to the Complaint. Defendants deny any characterization of said Exhibit C which Plaintiff has made and affirmatively allege that Exhibit C speaks for itself.

24.     Defendants admit that Exhibit D to the Complaint is a true and accurate copy of certain correspondence dated July 27, 2004. Defendants allege that said Exhibit D speaks for itself. Defendants admit that they have rejected Tremont's demand for payment of a brokerage fee relative to financing for the Project and affirmatively allege that Tremont has yet to perform pursuant to the terms of the Agreement and arrange for the "subject financing" for the Project and accordingly Tremont is not entitled to any brokerage fee relative to the Project.

25.     Defendants incorporate by reference all of their responses to the allegations set forth in rhetorical paragraphs 1 through 24 of Plaintiff's Complaint herein above as if fully set forth verbatim in this paragraph 25.

26.     Denied.

27.    Denied.  Moreover, Defendants affirmatively allege that Tremont has failed to perform the conditions precedent to its right to collect any brokerage fee or commission relative to this matter.  In particular, Tremont has failed to provide or arrange for other lending sources to provide the "subject financing" for the Project.

28.    Denied.

29.    Defendants incorporate by reference all of their responses as set forth above to rhetorical paragraphs 1 through 28 of Plaintiff's Complaint as if set forth verbatim in this paragraph 29.

30.    Admitted.

31.    Denied.

32.    Denied.

33.    Defendants incorporate by reference all of their previous responses to rhetorical paragraphs 1 through 32 of Plaintiff's Complaint as if set forth verbatim in this paragraph 33.

34.    Denied.

35.    Denied.

36.    Defendants incorporate by this reference all of their responses to rhetorical paragraphs 1 through 35 of Plaintiff's Complaint as if set forth verbatim in this paragraph 36.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Defendants incorporate by reference all of their responses to the allegations set forth in rhetorical paragraphs 1 through 39 of Plaintiff's Complaint as if set forth verbatim in this paragraph 40.

41.    Defendants deny that they are engaged in trade or commerce within the meaning of Mass. Gen. Laws c. 93A, § 1.  Defendants affirmatively allege that they are not subject to jurisdiction within the courts of Massachusetts and that the Massachusetts statutes are not applicable to Defendants in this matter.  Moreover, to the extent that the allegations in this rhetorical paragraph of Plaintiff's Complaint can be construed or interpreted to imply that Defendants have violated the provisions of any laws of the Commonwealth of Massachusetts, or otherwise, said allegations are specifically denied.  Defendants have never availed themselves of the privilege of doing business in Massachusetts.

42.    Denied.

43.    Denied.

44.    Denied.  Moreover, Defendants assert that they have committed no unfair or deceptive acts at any time.

45.    Denied.

## AFFIRMATIVE DEFENSES

a.    Failure to state a claim upon which relief may be granted;

b.    Failure of consideration;

c.    Failure of conditions precedent;

d.    Failure of conditions subsequent;

e.    Fraud;

f.    Illegality;

g.    Laches;

h.    Statute of frauds;

i.    Lack of jurisdiction over the person of all of the Defendants;

j.    Improper venue of this action;

k.    *Forum Non-Conveniens*;

l.    Contributory negligence;

m.    Assumption of the risk;

n.    Comparative fault;

o.    Failure to do equity;

p.    Unclean hands;

q.    Any other matter constituting an avoidance or affirmative defense which Defendants may subsequently discover; and

r.    *Estoppel* (promissory and equitable).

WHEREFORE, by reason of the foregoing, Defendants request that Plaintiff take nothing by way of its Complaint, and that Defendants be awarded their reasonable costs and attorney's fees incurred in the defense of this matter, and for all other relief which the Court or other trier of fact deems just and appropriate under the circumstances.

## FIRST AMENDED COUNTERCLAIMS

Counterclaimants hereby allege the following counterclaims against Plaintiff Tremont:

### (Allegations Common to all Counts)

1.    Tremont is a Delaware Corporation with its principle place of business located at 800 Boylston Street, Suite 401, Boston, Massachusetts.

2.    Tremont also maintains (and has maintained at all times material hereto) a corporate office in the State of Arizona, specifically at 7526 E. Camelback Road, Scottsdale, Arizona 85251.

3.    Counterclaimant Pinnacle is an Arizona limited liability company with its principle place of business located at 8145 N. 86th Street, Scottsdale, Arizona.

4.      Counterclaimant Adams Canyon is an Arizona limited liability company with its principle place of business located at 8145 N. 86th Street, Scottsdale, Arizona.

5.      Counterclaimant Lang is an individual residing in Scottsdale, Arizona. Lang is President, CEO, and one of two co-managers of Pinnacle.

6.      Counterclaimant Grady is an individual residing in Paradise Valley, Arizona.  Grady is the CFO and the other Co-Manager of Pinnacle, as well as being the Manager of Santa Paula Development Partners, LLC, which is the Manager of Adams Canyon.

7.      At all times material hereto Counter-Defendant Tremont acted through its authorized directors, officers, members, partners, representatives and agents including, but not limited to, Daniel O. Mee ("Mee"), Richard C. Gallitto ("Gallitto"), and Russell Posorske ("Posorske").

8.      Upon information and belief, Mee is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Mee out as an "Executive Director" of Tremont to members of the general public, including Defendants/Counterclaimants herein.

9.      Upon information and belief, Posorske is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Posorske out as a "Senior Director" of Tremont to members of the general public, including Defendants/Counterclaimants herein.

10.      Upon information and belief, Gallitto is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Gallitto out as an "Executive Director" of Tremont to members of the general public, including Defendants/Counterclaimants herein.

- 11 -

11.    At all times material hereto, the statements of Mee, Gallitto, and Posorske, and other actions and conduct of Mee, Gallitto and Posorske, were made or undertaken for each of their own respective personal benefits and interests, as well as for the personal benefit and interest of Tremont.

12.    In the year 2003 Tremont, through its agents Posorske, Mee, Gallitto, and/or others, entered into negotiations with Counterclaimants relative to the terms of a certain Mortgage Banking Agreement.  A portion of said Mortgage Banking Agreement ("Agreement") is annexed as Exhibit A to the Complaint which Tremont has filed in this cause.

13.    Prior to entering into this Agreement, Counterclaimants were solicited by Tremont's Arizona representative and agent (Posorske) in Arizona.

14.    At all times in his dealings with Counterclaimants, Tremont's Arizona representative (Posorske) represented himself to be a Senior Director with Tremont. In addition, Tremont lists Posorske on its international website as a "Senior Director" with Tremont.

15.    Prior to entering into negotiations with Counterclaimants, Tremont had formed a joint venture with Posorske and other persons known as "Tremont-Fortis Realty Capital, LLC" ("Tremont-Fortis").

16.    Counterclaimants knew that Posorske was (or had been) a principal in an entity known as Fortis Advisors, LLC, and had been involved in the financing of various real estate ventures in previous years that included Posorske's participation in securing hundreds of millions of dollars of investment money for real estate portfolios from "Wall Street."  Indeed, upon information and belief, Posorske, as a member of Fortis Advisors, obtained $450,000,000.00 in funds from Shearson

Lehman Brothers' clients' investment monies in previous years and had invested those monies into real estate ventures involving Posorske himself.

17.     Posorske held himself out to be extremely knowledgeable, experienced, well-connected with various sources of real estate capital, and misrepresented that he was quite capable of handling a project of the magnitude of the one for which Counterclaimants were seeking the "subject financing" known as the Ranch at Santa Paula (the "Project") and in arranging for funding real estate projects having the parameters of the "subject financing."

18.     Defendant Tremont, acting through Posorske, Gallitto, Mee and others, also held itself out as being extremely knowledgeable, experienced, well-connected relative to potential real estate capital funding sources, and quite capable of handling a real estate project of the magnitude of the Project.

19.     At all times Tremont represented to Counterclaimants that its Arizona based representative (Posorske) possessed the expertise, background and authority to not only negotiate on behalf of Tremont relative to the Mortgage Banking Agreement entered into by the parties, but also that Posorske, being a Senior Director with Tremont, had an extensive amount of experience, background, skill, expertise and knowledge with regard to:  (1) obtaining financing for real estate projects of the character, quality, and magnitude of the project; and (2) obtaining the correspondingly requested "subject financing."

20.     Tremont also represented that it, as well as its agents and representatives (Posorske, Tremont-Fortis, Mee, Gallitto and others) had an extensive amount of expertise, background, skill, experience, and knowledge in obtaining financing for real estate projects of a character, quality and magnitude of the "subject financing" (as defined below) involved in the Project.

## COUNT I
### (Fraud)

21.    Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 20 of this Counterclaim as if set forth verbatim herein.

22.    In the course of the negotiations leading up to the execution of the Agreement upon which Tremont's Complaint in this matter is allegedly based the parties discussed the financing for the Project which Counterclaimants sought to obtain, which financing consisted of a specified amount, specific terms, and was designed for a specific purpose.  The amount, terms, and purpose of the financing for the Project was as follows:

a.    The amount of the loan was to be $16,500,000.00;

b.    The loan was to be an "entitlement loan" which, under the circumstances of this matter, meant it was to be used for the purpose of enabling the Counterclaimants to modify the zoning on the property comprising the Project to allow for the construction of one home per ten (10) acres, and the development of a golf course, golf course clubhouse, and an equestrian center on the real estate;

c.    The term of the loan was to be for a minimum of four (4) years;

d.    The interest rate on the loan was to be in the approximate range of 10 to 12 percent (10%-12%) per annum;

e.    The loan was to allow for a return to Counterclaimants upon closing (placing) of the loan of 100% of Counterclaimants' previously invested equity relative to the Project (i.e., a return of approximately $4.4 million dollars back to Counterclaimants);

f.      The loan was to be non-recourse as to Counterclaimants (*i.e.*, was to be secured by the real estate and the Project itself) meaning the approximate 4100 acres which comprised the Project at that time; and

g.      There was to be no requirement for any additional investment of monies by Counterclaimants on a "go forward" basis during the four (4) year loan period, meaning, among other things, that the $45,000.00 per month Counterclaimants had to pay Dahlberg Farms, Inc. each month would be paid from the proceeds of the loan each month going forward during said four (4) year term.

23.     The loan terms and provisions set forth in paragraph 22(a) through 22(g) above are what are referred to in this pleading as the "subject financing" and indeed constitute what Counterclaimants, Tremont, Mee, Gallitto, Posorske, Tremont-Fortis, Fortis-Advisors, and all other employees and representatives of Tremont who were involved in the negotiation of the Agreement understood the "subject financing" to be referring to when used in the Agreement and otherwise.

24.     During the negotiations leading up to the execution of the Agreement between the parties, as well as thereafter, Tremont made several representations and misrepresentations to Counterclaimants, including, but not limited to, the following:

a.      That Posorske was extremely knowledgeable and experienced in obtaining financing of the magnitude, scope and nature of the "subject financing" and was knowledgeable and experienced in obtaining financing for projects of the scope and magnitude of the Project in particular;

b.      That Tremont could (and would) utilize commercially reasonable efforts to secure for the Counterclaimants the 'subject financing' (*i.e.*, financing

for the project which met all of the terms and parameters as set forth in

paragraph 22 herein above);

c.      That the subject financing could be obtained by Tremont for

Counterclaimants in a timely fashion and in a commercially reasonable

time frame and manner; and

d.      That one of Tremont's most senior and experienced individuals (*i.e.*,

Gallitto) would be the "lead" or "point person" who would primarily take

the most active role in contacting potential funding sources, negotiating

and dealing with said potential funding sources, and finalizing and

consummating the ultimate obtainment of the subject financing from

one or more funding sources for the benefit of Counterclaimants and the

project.

25.      The above representations and misrepresentations made by Tremont, as

well as other representations and misrepresentations which Tremont made, were

material in that they were matters of extreme significance and importance to

Counterclaimants, such that Counterclaimants would never have agreed to the

exclusivity provision in the Agreement with Tremont had Tremont not made these

representations to Counterclaimants.

26.      At the time that Tremont made these various representations to

Counterclaimants, Tremont knew that said representations were false, including, but

not limited to, the fact that Tremont did not (and never intended) to allocate its work

product in such a fashion as to cause Gallitto to be the lead person on this Project,

but instead Tremont assigned Posorske the responsibility for being the lead person for

securing the "subject financing." In addition, Tremont knew that it could not obtain

financing for the Project in accordance with the terms and conditions which

comprised the "subject financing." In addition, Tremont misrepresented the skill, knowledge, experience and background level and abilities of Posorske relative to Posorske's ability to obtain financing for the Project in general, let alone financing for the Project which would comport with the "subject financing" which Counterclaimants were seeking.

27.    These representations, as well as others, by Tremont were false and Tremont knew they were false at the time that the representations were made to Counterclaimants.

28.    Counterclaimants relied upon said representations/misrepresentations in the exact manner in which Tremont had intended, to wit: Counterclaimants capitulated and agreed to certain "exclusivity" terms being inserted in the Agreement to the effect that Tremont was given a "exclusive listing" relative to obtaining the "subject financing."

29.    Although Counterclaimants were not obligated to refrain from seeking the subject financing from potential funding sources on their own, in spite of the exclusivity provisions of the Agreement, Counterclaimants nevertheless did not approach other potential direct lending sources for the subject financing for a period of time after the execution of the Mortgage Banking Agreement.

30.    Counterclaimants' reliance on said representations by Tremont was reasonable under the circumstances and was of such a kind and nature as to have been the type of reliance which was reasonably contemplated by Tremont.

31.    Counterclaimants have incurred damages as a result of Tremont's misrepresentations in this matter, including, but not limited to, the following:

a.      Counterclaimants were forced to get a "bullet" loan in order to obtain interim stop-gap financing for the Project which cost Counterclaimants nine (9) percentage points in fees and commissions;

b.      The stop-gap financing which Counterclaimants were forced to obtain provides for a maturity date that is 36 months subsequent to the date of the Loan; however, said stop-gap financing in practicality has a term of only 18 months based upon the approved cash flow schedule (sources and uses schedule) for the project. This "shortage" in terms of the allocation of the loan proceeds negatively impacts Third-Party Plaintiffs' ability to obtain the entitlements to the property it now seeks, which will necessitate additional fees, costs and interest expenses in the near future;

c.      Counterclaimants are obligated on a "go forward" basis to pay approximately $45,000.00 per month to Dahlburg Farms, Inc. as its pre-agreed management and consulting fees relative to the Project;

d.      Counterclaimants have incurred, and continue to incur, an extensive amount of attorney's fees to negotiate the bullet loan, as well as attorney's fees relative to this litigation;

e.      Counterclaimants have received a return of their original approximate $5 million dollars worth of equity in the Project; however, they are obligated (contrary to the terms of the subject financing they had been seeking) to reinvest these monies back into the Project at the rate of $45,000.00 per month to cover the Dahlburg Farms, Inc.'s payment. These were monthly payments that the subject financing had been designed to cover, and thus Counterclaimants have lost the opportunity cost on said

funds since approximately July 2004, and continue to lose the opportunity cost on said funds for each successive month that expires hereafter; and

f.    Counterclaimants have been otherwise damaged as a result of Tremont's intentional fraudulent conduct in this matter.

32.    In addition to its actual damages incurred as a result of Tremont's fraudulent conduct in this matter, Counterclaimants are entitled to an award of punitive damages against Tremont in order to punish Tremont for its intentionally tortious conduct in this matter, as well as to deter others of a like mind from potentially engaging in said intentionally tortious conduct in the future.

WHEREFORE, by reason of the foregoing, Counterclaimants pray for a judgment against Tremont as follows:

A.    In the full amount of Counterclaimants' actual damages incurred as a result of Tremont's intentionally tortious conduct;

B.    In an amount of punitive damages sufficient to punish Tremont for its intentionally tortious conduct as well as to deter others of a similar mind from engaging in such conduct in the future;

C.    For Counterclaimants reasonable costs and attorney's fees incurred in the processing of this Counterclaim; and

D.    For all of the relief which the trier of fact deems Counterclaimants to be entitled.

## COUNT II
**(Unfair and Deceptive Acts and Practices Pursuant M.G.L. c. 93A)**

33.    Counterclaimants hereby re-allege and incorporate all of the matter set forth in rhetorical paragraphs 1 through 32 set forth above as if set forth verbatim

herein.

34.    Tremont is engaged in trade or commerce within the meaning of M.G.L. c. 93A, §1.

35.    The actions of Tremont were calculated to obtain the benefits provided by the Counterclaimants under the Agreement (including, but not limited to, providing Tremont with an exclusive listing, agreeing to a $25,000.00 break-up fee, a mortgage brokerage fee in excess of $800,000.00, etc.) without Tremont having to provide Counterclaimants with the consideration promised under the Agreement.

36.    The actions of Tremont as alleged herein constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93A, §§ 2 & 11.

37.    The unfair and deceptive acts committed by Tremont were knowing and willful.

38.    Tremont's conduct has caused and continues to cause Counterclaimants damage.

39.    According to M.G.L. c. 93A, Counterclaimants are entitled to an award of their reasonable attorney's fees and costs incurred as a result of Tremont's violations of said statute; in addition, Counterclaimants are entitled to an award of two to three times their compensatory and consequential damages as a result of Tremont's knowing and willful violations of M.G.L. c. 93A.

WHEREFORE, Counterclaimants respectfully request that they be awarded a judgment against Tremont as follows:

A.    In favor of Counterclaimants and against Tremont in the full amount of Counterclaimants' actual damages incurred as a result of Tremont's unfair and deceptive acts and practices under M.G.L. c. 93A in an amount to be determined by the trier of fact;

B.    A judgment in Counterclaimants' favor and against Tremont equal to treble damages (*i.e.*, an amount three times Counterclaimants' compensatory and consequential damages) for Tremont's knowing and willful violations of M.G.L. c. 93A;

C.    For an award to Counterclaimants of their reasonable attorney's fees and costs incurred as a result of Tremont's violations of M.G.L. c. 93A; and

D.    All other relief which the Court or other trier of fact deems just and appropriate under the circumstances.

## COUNT III
### (Negligence)

40.    Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 39 of this Counterclaim as if set forth verbatim herein.

41.    The conduct of Tremont in this matter was negligent in several respects, including, but not limited to, the fact that Tremont assembled the financing package which Tremont knew, or a reasonable and prudent mortgage broker in the same circumstance as Tremont should have known, would never get financed.

42.    Tremont's agents and representatives, including, but not limited to, Mee, Gallitto, and Posorske, made statements, representations, and misrepresentations to Counterclaimants which were knowingly false, and/or were made without sufficient knowledge of their truth or falsity of said statements and that conduct, along with Tremont's other conduct in this matter fell below the standard of care of an ordinary and reasonable and prudent person under the same or similar circumstances.

43.    Tremont's negligent misrepresentations and/or other acts of negligence were the proximate and foreseeable causes of the damages which were

consequentially incurred by Counterclaimants as set forth previously.

WHEREFORE, by reason of the foregoing, Counterclaimants pray for a judgment against Tremont as follows:

A.    In an amount sufficient to compensate Counterclaimants for their actual and consequential damages incurred as a result of Tremont's negligence in this matter; and

B.    For all other relief which the Court or other trier of fact deems just and appropriate under the circumstances.

## COUNT IV
### (Breach of Contract)

44.    Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 43 of this Counterclaim as if set forth verbatim herein.

45.    In all contracts entered into in both the State of Arizona as well as the State of Massachusetts there are implied covenants of good faith and fair dealing.

46.    Based upon the matters alleged herein, and otherwise, Tremont breached the implied covenant of good faith and fair dealing, as well as other provisions contained within Agreement existing between the parties.

47.    Tremont never performed its part of the contract and never provided the "subject financing."

48.    Tremont's various breaches of contract have caused, and continue to cause, damage to Counterclaimants.

WHEREFORE, by reason of the foregoing, Counterclaimants pray for a judgment against Tremont as follows:

A.    In an amount sufficient to compensate Counterclaimants for their actual and consequential damages incurred as a result of Tremont's breach of its Agreement with Counterclaimants;

B.    For all other relief which the Court or other trier of fact deems just and appropriate under the circumstances; and

C.    For an award of Counterclaimants' reasonable attorney's fees and costs incurred in the prosecution of this matter.

<u>**COUNT V**</u>
**(Declaratory Judgment)**

49.    Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 47 of this Counterclaim as if set forth verbatim herein.

50.    An examination of the Agreement upon which Plaintiff has brought this litigation (Exhibit A to the Complaint) evidences that the alleged Agreement does not contain an expiration date, nor is there otherwise a time parameter set forth in which Tremont is to perform its duties and obligations under said Agreement.

51.    In addition, the Agreement specifically indicates that Tremont is to obtain the "subject financing" for Counterclaimants relative to the Project. The term "subject financing" is a term that had specifically defined meaning relative to the parties and their Agreement, said defined meaning being previously set forth in paragraph 22 herein above.

52.    According to the parties' alleged Agreement, if said Agreement is enforceable at all, the obtaining of the "subject financing" for the benefit of the Counterclaimants by Tremont was a condition precedent to Tremont's right to collect its commission as called for under the Agreement. As of this time the "subject

financing" has **never** been obtained by Counterclaimants from any lending/funding source supplied by Tremont, or from any other lending/funding source of any kind whatsoever.

53.    Accordingly, an express condition precedent to Tremont's right to receive payment of its commission pursuant to the Agreement has never occurred.

54.    Moreover, a condition subsequent has occurred, specifically the passage of a reasonable period of time in which Tremont was to have performed its obligations under said Agreement.

55.    Given the fact that a commercially reasonable time has expired within which Tremont  was to have performed under the Agreement, coupled with the fact that the express condition precedent to the obligation of Counterclaimants to pay any commission to Tremont (*i.e.*, Tremont's arranging for the subject financing for the Project), has not been met, Counterclaimants allege that there is no longer  an enforceable agreement existing between the parties and/or that Counterclaimants cannot be deemed to be in breach of an agreement because of the failure of an express condition precedent to Counterclaimants' obligation to perform, namely the failure of Tremont to provide or arrange for the "subject financing."

56.    Accordingly, Counterclaimants seek a declaration of their rights and obligations pursuant to the alleged Agreement.

WHEREFORE, by reason of the foregoing, Counterclaimants pray for a judgment against Tremont as follows:

a.    Whether or not there ever has been an enforceable agreement existing between Counterclaimants and Tremont;

b.    Exactly what the terms of that Agreement were and/or were not;

c.   What a reasonable time for performance by Tremont of its obligations under the Agreement would have been and/or whether or not that reasonable time has already expired;

d.   Assuming a binding contract was entered into between the parties, and assuming the terms of that Agreement are established, whether or not Tremont and/or Counterclaimants have, or either of them have, breached any portion of said Agreement;

e.   Counterclaimants also request the Court to declare all of the parties' other rights and obligations pursuant to the alleged Agreement; and

f.   Such other relief as the Court deems just and proper.

### COUNT VI
### (Consumer Fraud)

57.   Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1-56 of this Counterclaim as if set forth verbatim herein.

58.   Arizona Revised Statutes ("A.R.S.") §44-1521, *et seq.* provides that the use by any "person" (defined as being a corporation or individual) of any deception, deceptive act, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact, with intent that the others rely thereon in connection with the sale of any merchandise, whether or not the person, has, in fact, been mislead, deceived, or damaged thereby, is declared to be an unlawful practice.

59.   The providing of personal services has been determined under Arizona law to be encompassed within the definition of "merchandise" within the scope and intent of A.R.S. §44-1521, *et seq.*

- 25 -

60.    A.R.S. §44-1521, *et seq.* inferentially creates a private right of action for deceptive practices in general and, accordingly, Counterclaimants are entitled to bring this cause of action against Tremont.

61.    Counterclaimants have been actually damaged as a result of Tremont's unlawful practices as set forth previously herein.

62.    By reason of the foregoing Tremont is liable to Counterclaimants for violating A.R.S. 1522, *et seq.* and for having perpetrated a consumer fraud upon Counterclaimants.

WHEREFORE, Counterclaimants pray for judgment against Tremont as follows:

A.    In the full amount of Counterclaimants' actual damages incurred in this matter;

B.    For an amount equal to pre-judgment interest on said sums as allowed by law;

C.    For an award of punitive damages in the amount as determined by the court or other trier of fact which is sufficient to punish Tremont for its intentionally tortuous conduct in this matter, as well as in an amount sufficient to operate as a deterrent to others from engaging in such conduct in the future; and

D.    For all other relief which the court or other trier of fact deems just and appropriate under the circumstances.

Respectfully Submitted,

/s/ *William J. Hunt*

William J. Hunt (BBO #244720)
Armando J. Acosta (BBO #648242)
**Clark Hunt & Embry**
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

Dated:  April 15, 2005

- 26 -