## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TREMONT REALTY CAPITAL, INC., a Massachusetts Corporation,<br>     Plaintiff, | **Case No. 04-11853-RGS** |
| v. | |
| PINNACLE GROUP, LLC, an Arizona limited liability company; ADAMS CANYON RANCH, LLC, an Arizona limited liability company, JOHN LANG, an individual; and MICHAEL GRADY, an individual,<br>     Defendants<br>and | |
| _____ | **DEFENDANT/THIRD-PARTY PLAINTIFF'S OPPOSITION TO THE THIRD-PARTY DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED THIRD-PARTY COMPLAINT** |
| PINNACLE GROUP, LLC, an Arizona limited liability company; ADAMS CANYON RANCH, LLC, an Arizona limited liability company, JOHN LANG, an individual; and MICHAEL GRADY, an individual,<br>     Counterclaimants, | |
| v. | |
| TREMONT REALTY CAPITAL, INC., a Massachusetts Corporation,<br>     Counter-Defendant,<br>and | |
| _____ | |
| PINNACLE GROUP, LLC, an Arizona limited liability company; ADAMS CANYON RANCH, LLC, an Arizona limited liability company, JOHN LANG, an individual; and MICHAEL GRADY, an individual,<br>     Third-Party Plaintiffs, | |
| v. | |
| FORTIS ADVISORS, LLC, an Arizona limited liability company; TREMONT-FORTIS REALTY CAPITAL, LLC, an unknown entity; RUSSELL POSORSKE, an individual; RICHARD C. GALLITTO, an individual; DANIEL O. MEE, an individual,<br>     Third-Party Defendants. | |

Now come the defendants/third-party plaintiffs, Pinnacle Group, LLC, Adams

Canyon Ranch, LLC, John Lang, and Michael Grady (hereinafter collectively referred to

as "Third-Party Plaintiffs"), and hereby oppose the third-party defendants' motion to dismiss the first amended third-party complaint. In support of this opposition, the Third-Party Plaintiffs state that the allegations of its third-party complaint comply with Fed. R. Civ. P. Rule 9(b) in that they provide the third-party defendants with adequate notice of the fraud claims against them, and are plead with sufficient particularity. In further support of its opposition, the Third-Party Plaintiffs refer this Court to their Opposition to Tremont Realty Capital, Inc.'s Motion to Dismiss Counts I, II, III, and VI of the First Amended Counterclaim, which is incorporated by reference herein.

In the event that this Court determines that the Third-Party Plaintiffs' fraud claims are not plead with sufficient particularity, the Third-Party Plaintiffs hereby move this Honorable Court for leave to amend their First Amended Third-Party Complaint, pursuant to Fed. R. Civ. P. Rule 15(a). In support of this motion, the Third-Party Plaintiffs state that the third-party defendants would not suffer any undue prejudice should leave to amend be granted. In further support of this motion, the Third-Party Plaintiffs refer the Court to their Motion for Leave to Amend the First Amended Counterclaims, incorporated by reference herein. The Third-Party Plaintiffs' proposed Second Amended Third-Party Complaint is attached hereto as Exhibit A.

WHEREFORE, for all of the foregoing reasons, the Third-Party Plaintiffs hereby request that the third-party defendants' Motion to Dismiss the First Amended Third-Party Complaint be denied or, in the alternative, that the Third-Party Plaintiffs' Motion for Leave to Amend the First Amended Third-Party Complaint be granted.

## REQUEST FOR HEARING

The defendants/third-party plaintiffs, Pinnacle Group, LLC, Adams Canyon Ranch, LLC, John Lang, and Michael Grady, respectfully request a hearing on Third-

Party Defendants' Motion to Dismiss the First Amended Third-Party Complaint and their

opposition thereto.

Respectfully Submitted,

PINNACLE GROUP, LLC,
ADAMS CANYON RANCH, LLC,
JOHN LANG, and MICHAEL GRADY,

/s/ *Armando J. Acosta*
_____
William J. Hunt (BBO #244720)
Armando J. Acosta (BBO #648242)
**Clark Hunt & Embry**
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

Dated:  June 24, 2005

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of June, 2005, a courtesy copy of the above document was served, by first class mail, upon plaintiff's attorneys, James M. Wodarski, Esq., and Michael S. Day, Esq., Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 1 Financial Center, Boston, MA  02111:

/s/ *Armando J. Acosta*
_____

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

TREMONT REALTY CAPITAL, INC., a
Massachusetts Corporation,
     Plaintiff,

v.

PINNACLE GROUP, LLC, an Arizona limited
liability company; ADAMS CANYON RANCH,
LLC, an Arizona limited liability company,
John Lang, an individual; and Michael
Grady, an individual,
     Defendants,
and

_____

PINNACLE GROUP, LLC, an Arizona limited
liability company; ADAMS CANYON RANCH,
LLC, an Arizona limited liability company,
John Lang, an individual; and Michael
Grady, an individual,
     Counterclaimants,

v.

TREMONT REALTY CAPITAL, INC., a
Massachusetts Corporation,
     Counter-Defendant,
and

_____

PINNACLE GROUP, LLC, an Arizona limited
liability company; ADAMS CANYON RANCH,
LLC, an Arizona limited liability company,
John Lang, an individual; and Michael
Grady, an individual,
     Third-Party Plaintiffs,

v.

FORTIS ADVISORS, LLC, an Arizona
limited liability company; TREMONT-FORTIS
REALTY CAPITAL, LLC, an unknown entity;
RUSSELL POSORSKE, an individual;
RICHARD C. GALLITTO, an individual;
DANIEL O. MEE, an individual,
     Third-Party Defendants.

**Case No.  04-11853-RGS**


**SECOND AMENDED THIRD-PARTY
COMPLAINT**

## INTRODUCTION

1.    Pinnacle Group, LLC, an Arizona limited liability company, Adams Canyon Ranch, LLC, an Arizona limited liability company, John Lang, an individual and Michael Grady, an individual, all of whom are collectively referenced to hereafter as "Third Party Plaintiffs," have been sued by Tremont Realty Capital, Inc. (hereinafter "Tremont") in the United Stated District Court for the District of Massachusetts.  In addition to counter-claiming against Tremont, the Third-Party Plaintiffs assert this Second Amended Third-Party Complaint.

## JURISDICTION

2.    Jurisdiction is proper over each of the Third-Party Defendants pursuant to 28 U.S.C. § 1367.

## PARTIES

3.    Third-Party Plaintiff Pinnacle Group, LLC (hereinafter "Pinnacle") is an Arizona limited liability company with its principal place of business located at 8145 N. 86th Street, Scottsdale, Arizona.

4.    Third-Party Plaintiff Adams Canyon Ranch, LLC (hereinafter "Adams Canyon") is an Arizona limited liability company with its principal place of business located at 8145 N. 86th Street, Scottsdale, Arizona.

5.    Third-Party Plaintiff John Lang (hereinafter "Lang") is an individual residing in Scottsdale, Arizona.  Lang is President, CEO, and one of two co-managers of Pinnacle.

6.    Third-Party Plaintiff Michael Grady (hereinafter "Grady") is an individual residing in Paradise Valley, Arizona.  Grady is the CFO and the other Co-Manager of Pinnacle, as well as being the Manager of Santa Paula Development Partners, LLC, which is the Manager of Adams Canyon.

- 2 -

7.      Upon information and belief, Third-Party Defendant Fortis Advisors, LLC (hereinafter "Fortis") is an Arizona limited liability company with its principal place of business located at 7526 East Camelback Road, Scottsdale, Arizona.

8.      Third-Party Defendant Tremont-Fortis Realty Capital, LLC (hereinafter "Tremont-Fortis") is an unknown entity and its domicile is also presently unknown to Third-Party Plaintiff.  Upon information and belief, Third-Party Defendant Russell Posorske is a principal of Tremont-Fortis, and Tremont is somehow affiliated with Tremont-Fortis.

9.      Upon information and belief, Third-Party Defendant Daniel O. Mee (hereinafter "Mee") is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Mee out as an "Executive Director" of Tremont to members of the general public, including Defendants/Third-Party Plaintiffs herein.

10.     Upon information and belief, Third-Party Defendant Russell Posorske (hereinafter "Posorske") is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Posorske out as a "Senior Director" of Tremont to members of the general public, including Defendants/Third-Party Plaintiffs herein.

11.     Upon information and belief, Third-Party Defendant Richard C. Gallitto (hereinafter "Gallitto") is, and was at all times material hereto, a director, officer, employee, and/or authorized representative and agent of Tremont and Tremont held Gallitto out as an "Executive Director" of Tremont to members of the general public, including Defendants/Third-Party Plaintiffs herein.

## RHETORICAL ALLEGATIONS

12.    Third-Party Plaintiffs hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1-21 of the Counterclaims in the "Second Amended Answer and Second Amended Counterclaim" filed by Third-Party Plaintiffs, as if restated verbatim herein.

## COUNT I
### (Fraud)

13.    Counterclaimants hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 12 of this Second Amended Third-Party Complaint as if set forth verbatim herein.

14.    In the course of the negotiations leading up to the execution of the Agreement upon which Tremont's Complaint in this matter is allegedly based, the parties discussed the financing for the Project which Third-Party Plaintiffs sought to obtain, which financing consisted of a specified amount, specific terms, and was designed for a specific purpose.  Pinnacle Group, through its agents Grady and Lang, specifically advised Posorske individually and as agent of Tremont, Tremont-Forts, and Fortis, as well as Mee and Gallitto, individually and as agents of Tremont, on more than one occasion in July and August, 2003, the specific amount, terms, and purpose for the subject financing.  The amount, terms, and purpose of the financing for the Project told to Mee, Gallitto  and Posorske was as follows:

a.    The amount of the loan was to be $16,500,000.00;

b.    The loan was to be an "entitlement loan" which, under the circumstances of this matter, meant it was to be used for the purpose of enabling the Third-Party Plaintiffs to modify the zoning on the property comprising the Project to allow for the construction of one home per ten (10) acres, and the development of a golf course, golf course clubhouse, and an

- 4 -

equestrian center on the real estate;

c.     The term of the loan was to be for a minimum of four (4) years;

d.     The interest rate on the loan was to be in the approximate range of 10 to 12 percent (10%-12%) per annum;

e.     The loan was to allow for a return to Third-Party Plaintiffs upon closing (placing) of the loan of 100% of their previously invested equity relative to the Project (i.e., a return of approximately $4.4 million dollars back to Third-Party Plaintiffs);

f.     The loan was to be non-recourse as to Third-Party Plaintiffs (*i.e.*, was to be secured by the real estate and the Project itself) meaning the approximate 4100 acres which comprised the Project at that time; and

g.     There was to be no requirement for any additional investment of monies by Third-Party Plaintiffs on a "go forward" basis during the four (4) year loan period, meaning, among other things, that the $45,000.00 per month Third-Party Plaintiffs had to pay Dahlberg Farms, Inc. each month would be paid from the proceeds of the loan each month going forward during said four (4) year term.

15.     The loan terms and provisions set forth in paragraph 22(a) through 22(g) above are what are referred to in this pleading as the "subject financing" and indeed constitute what Third-Party Plaintiffs, and Tremont, Mee, Gallitto, Posorske, Tremont-Fortis, Fortis, and all other employees and representatives of Tremont who were involved in the negotiation of the Agreement, understood the "subject financing" to be referring to when used in the Agreement and otherwise.

16.     Sometime in late July, or the first day or two in August, 2003, Grady received a telephone call from Posorske desiring to meet with Grady to talk about the

Project. Two days later, sometime during the first week of August 2003, Posorske had his first face-to-face meeting with Third-Party Plaintiffs concerning the project. Present in attendance at this meeting were Posorske, Grady, Lang, and Boyd. The meeting was held at Pinnacle's office at 8145 N. 86th Place, Scottsdale, Arizona.

17.    In this first face-to-face meeting, Posorske, who represented himself to Third-Party Plaintiffs as having had significant previous "Wall Street experience" as far as obtaining funding for real estate loans is concerned, discussed all of the details of the project with Third-Party Plaintiffs. Grady, Lang and Boyd advised Posorske about the various details of the project, the plans for the overall development of the project, and specifically shared with Posorske Pinnacle's financing needs (i.e., Pinnacle's representatives Grady, Lang and Boyd supplied to Posorske all of the details concerning the "subject financing").

18.    Two days later, still during the first seven to ten days in the month of August, 2003, Posorske contacted Grady and again established another face-to-face meeting which was held at Pinnacle's office at 8145 N. 86th Place. Present in this meeting were Lang, Grady, and Posorske. In this meeting, Posorske, who had also represented that he was acting as an agent of Tremont-Fortis and Fortis, advised that Posorske was "affiliated with Tremont" as a "Senior Director" and that he had reviewed the details of the "subject financing" with certain principals of Tremont and that those principals and Tremont "wanted to do the deal."

19.    In this second face-to-face meeting, Posorske supplied Third-Party Plaintiffs with a copy of his Tremont business card identifying himself as a "Senior Director" and also directed Third-Party Plaintiffs to review additional information concerning Tremont's capabilities and background on Tremont's website, which Grady and Lang did immediately after this second face-to-face meeting with Posorske.

20.    In this same second face-to-face meeting with Posorske, Grady specifically

- 6 -

asked Posorske the following: "Based on your knowledge of working with Tremont and being a part of the Tremont team, what can we expect if you guys go out and get financing for us?  What kind of terms are we looking at?"

21.    In direct response to this question, Mr. Posorske stated words to the effect that: "You can get your three to four year loan; you should be looking at an interest rate of between 10% to 12%; you can expect that the loan will be secured by the real estate which comprises the project; we should be able to get 100% of your equity back to you; and there will be no equity participation by the lender."

22.    Mr. Grady understood Posorske to be referring to the $4.5 million dollars which Third-Party Plaintiffs had previously invested into the project when Posorske stated that he believed Tremont should be able to "get 100% of your equity back to you."

23.    On the strength of those specific representations made by Posorske on behalf of Tremont, Tremont-Fortis, and Fortis, to Grady on behalf of Pinnacle, Pinnacle and the other Third-Party Plaintiffs authorized Posorske to proceed in putting together Tremont's "Fee Agreement" (i.e., the Mortgage Banking Agreement upon which Plaintiff's Complaint is based).

24.    In addition, in this second face-to-face meeting, as well as in subsequent telephone conversations over the next several days, Posorske expressly represented to Grady that he (Posorske) and the Third-Party Defendants were extremely knowledgeable and experienced in obtaining financing of the magnitude, scope and nature of the "subject financing."  In addition, Posorske expressly represented to Grady in this second face-to-face meeting, as well as in subsequent telephone conversations, that he (Posorske) and the Third-Party Defendants were knowledgeable and experienced in obtaining financing for projects of the scope and magnitude of the project in particular and that they could (and would) utilize commercially reasonable

efforts to secure for the Third-Party Plaintiffs the "subject financing" (i.e., financing for the project which met all of the above terms and parameters as set forth previously."

25.    In this same second face-to-face meeting with Grady and Lang, Posorske indicated that one of Tremont's most senior and experienced individuals (i.e., Gallitto) would be made the "lead" or "point person" who would primarily take the most active role in contacting potential funding sources, negotiating and dealing with said potential funding sources, and finalizing and consummating the ultimate obtainment of the subject financing from one or more funding sources for the benefit of the Third-Party Plaintiffs and the project.

26.    Approximately three or four days after the second face-to-face meeting during the first week of August, 2003, Mr. Posorske attended another "face-to-face" meeting with Mr. Grady at Pinnacle's office.  Prior to this third face-to-face meeting, Mr. Posorske and Mr. Grady exchanged numerous e-mails concerning various aspects of the project and the finalization of the language that would go into the Mortgage Banking agreement (the commission agreement upon which Plaintiffs have brought this action).

27.    In several phone conversations between Grady and Posorske between the second and the third face-to-face meeting, Posorske continued to reassure Grady and Pinnacle that Tremont felt it could broker the financing which Third-Party Plaintiffs were seeking (i.e., the subject financing).

28.    At the third face-to-face meeting Posorske, on behalf of Tremont, Tremont-Fortis, and Fortis, presented to Grady, on behalf of Pinnacle and Adams Canyon Ranch, the Mortgage Banking Agreement.  At the time the Agreement was presented to Grady, Grady was told (and subsequently saw) that the Agreement contained an exclusivity clause.  Grady balked at signing a brokerage agreement with Tremont that in effect gave Tremont an exclusive listing to find the subject financing for the property.

In this third face-to-face meeting Posorske insisted that Tremont had to have the exclusivity clause contained in the Agreement.

29.    When questioned as to why Tremont insisted on having an exclusive agreement, Posorske advised Grady (both in the third face-to-face meeting as well as in a subsequent phone conversation) to the effect that: "We are a large firm. We can't be out there representing this project to our partners if this thing is going to be shot-gunned across the United States. We need to know with some specificity that we are representing this as an exclusive transaction to our clients – that it is not being 'shopped' – because that's the way we work. You have to trust us. Our Resume is big and good and our sources are excellent, so you don't need to go shopping this deal around to everybody anyhow. Just let us do it exclusively."

30.    The above comments were made expressly by Mr. Posorske to Mr. Grady at the third face-to-face meeting held during the first 14 days of August, 2003 at Pinnacle's office at 8145 N. 86th Place, Scottsdale, Arizona.

31.    The Third-Party Plaintiffs unsuccessfully attempted to negotiate away the exclusivity provision. Finally, there was a fourth face-to-face meeting between Mr. Posorske and Mr. Grady, with no one else present, at Pinnacle's office in Scottsdale, Arizona sometime between August 20th and September 4, 2003. In this face-to-face meeting the necessity of the Third-Party Plaintiffs executing the Mortgage Banking Agreement containing the exclusivity provision became the primary topic of discussion. In the meeting Posorske utilized Third-Party Plaintiffs' telephone and called Tremont's offices in Boston and proceeded to get both Rick Gallitto and Dan Mee, who were two employees of Tremont and who were introduced over the telephone to Mr. Grady by Mr. Posorske at this fourth face-to-face meeting.

32.    Mr. Posorske, after getting Mr. Mee and Mr. Gallitto on the speaker phone in Pinnacle's conference room proceeded to share with Mr. Gallitto and Mr. Mee Mr.

Grady's concerns and hesitancy in wanting to sign an agreement with Tremont that contained an exclusive provision.

33.     In response to this explanation, Mr. Mee and Mr. Gallitto shared specifically with Mr. Grady the importance of giving a firm like Tremont an exclusive, stating specifically that Tremont was extremely knowledgeable and experienced in obtaining financing of the magnitude, scope and nature of the "subject financing," and that Tremont was knowledgeable and experienced in obtaining financing for projects of the scope and magnitude of the project in particular, and repeatedly indicated how Tremont was going to use all commercially reasonable efforts to secure for the Third-Party Plaintiffs the "subject financing" and that Tremont believed they could do so in a commercially reasonable time frame and manner.  Gallitto confirmed that he was one of Tremont's most senior and experienced individuals and that he, Gallitto, would be the "lead" or "point person" who would primarily take the most active role in contacting potential funding sources, negotiating and dealing with said potential funding sources, and finalizing and consummating the ultimate obtainment of the subject financing from one or more funding sources for the benefit of the Third-Party Plaintiffs and the project.

34.     In this fourth face-to-face meeting with Posorske, while Mr. Gallitto and Mr. Mee were on the speaker phone participating in the conversation, Gallitto, Mee, and Posorske were encouraging Grady and giving reasons supporting why the Third-Party Plaintiffs had to give Tremont an exclusive agreement.

35.     Ultimately Mr. Grady asked Messrs. Mee and Gallitto over the speaker phone a question in words to the effect that:  "Are you gentlemen representing to me that you can go out into this marketplace and get me this loan that I need - $16.5 million dollars, approximately 3 to 4 year terms, at approximately 10% to 12% interest on a non-recourse basis, and allowing for the return of our approximate $4.5 million

dollars in equity back to us with no additional or contingent investment required on our part?"

36.    In response to that question, all three (i.e., Mee, Gallitto and Posorske) responded "yes, we can.  Based on our best efforts and based on our abilities and our Resume, we can get a loan like that for you."

37.    In response to the representations by Tremont, Tremont-Fortis, and Fortis, through its representative Posorske, and the representations made by Mee and Gallitto, in that face-to-face/speaker phone conversation at Pinnacle's office in Scottsdale, Arizona between August 20, 2003 and September 4, 2003 – and based solely on those representations – Third-Party Plaintiffs executed the Mortgage Banking Agreement with the exclusivity provision included.

38.    As described above, during the negotiations leading up to the execution of the Agreement between the parties, as well as thereafter, the Third-Party Defendants made several representations and misrepresentations to Third-Party Plaintiffs as follows:

a.    That Posorske was extremely knowledgeable and experienced in obtaining financing of the magnitude, scope and nature of the "subject financing" and was knowledgeable and experienced in obtaining financing for projects of the scope and magnitude of the Project in particular;

b.    That Tremont could (and would) utilize commercially reasonable efforts to secure for the Third-Party Plaintiffs the 'subject financing' (i.e., financing for the project which met all of the terms and parameters as set forth in paragraph 14 herein above);

c.    That the subject financing could be obtained by Tremont for Third-Party Plaintiffs in a timely fashion and in a commercially reasonable time frame

- 11 -

and manner; and

d.   That one of Tremont's most senior and experienced individuals (*i.e.*, Gallitto) would be the "lead" or "point person" who would primarily take the most active role in contacting potential funding sources, negotiating and dealing with said potential funding sources, and finalizing and consummating the ultimate obtainment of the subject financing from one or more funding sources for the benefit of Third-Party Plaintiffs and the project.

39.   These representations and misrepresentations made by the Third-Party Defendants were material in that they were matters of extreme significance and importance to Third-Party Plaintiffs, such that Third-Party Plaintiffs would never have agreed to the exclusivity provision in the Agreement with Tremont had the representations not been made to Third-Party Plaintiffs.

40.   At the time that the Third-Party Defendants made these various representations to Third-Party Plaintiffs, the Third-Party Defendants knew that said representations were false, including, but not limited to, the fact that Tremont did not (and never intended) to allocate its work product in such a fashion as to cause Gallitto to be the lead person on this Project, but instead Tremont assigned Posorske the responsibility for being the lead person for securing the "subject financing." In addition, the Third-Party Defendants knew that they could not obtain financing for the Project in accordance with the terms and conditions which comprised the "subject financing." In addition, the Third-Party Defendants misrepresented the skill, knowledge, experience and background level and abilities of Posorske relative to Posorske's ability to obtain financing for the Project in general, let alone financing for the Project which would comport with the "subject financing" which Third-Party

Plaintiffs were seeking.

41.    These representations, as well as others, by the Third-Party Defendants were false and were known to be false at the time that the representations were made to Third-Party Plaintiffs.

42.    Third-Party Plaintiffs relied upon said representations/misrepresentations in the exact manner in which the Third-Party Defendants had intended, to wit: Third-Party Plaintiffs capitulated and agreed to certain "exclusivity" terms being inserted in the Agreement to the effect that Tremont was given a "exclusive listing" relative to obtaining the "subject financing."

43.    Although Third-Party Plaintiffs were not obligated to refrain from seeking the subject financing from potential funding sources on their own, in spite of the exclusivity provisions of the Agreement, Third-Party Plaintiffs nevertheless did not approach other potential direct lending sources for the subject financing for a period of time after the execution of the Mortgage Banking Agreement.

44.    Third-Party Plaintiffs' reliance on the representations by the Third-Party Defendants was reasonable under the circumstances and was of such a kind and nature as to have been the type of reliance which was reasonably contemplated by the Third-Party Defendants.

45.    Third-Party Plaintiffs have incurred damages as a result of the Third-Party Defendants' misrepresentations in this matter, including, but not limited to, the following:

    a.    Third-Party Plaintiffs were forced to get a "bullet" loan in order to obtain interim stop-gap financing for the Project which cost Third-Party Plaintiffs nine (9) percentage points in fees and commissions;

    b.    The stop-gap financing which Third-Party Plaintiffs were forced to obtain provides for a maturity date that is 36 months subsequent to the date of

- 13 -

the Loan; however, said stop-gap financing in practicality has a term of only 18 months based upon the approved cash flow schedule (sources and uses schedule) for the project. This "shortage" in terms of the allocation of the loan proceeds negatively impacts Third-Party Plaintiffs' ability to obtain the entitlements to the property it now seeks, which will necessitate additional fees, costs and interest expenses in the near future;

c.   Third-Party Plaintiffs are obligated on a "go forward" basis to pay approximately $45,000.00 per month to Dahlburg Farms, Inc. as its pre-agreed management and consulting fees relative to the Project;

d.   Third-Party Plaintiffs have incurred, and continue to incur, an extensive amount of attorney's fees to negotiate the bullet loan, as well as attorney's fees relative to this litigation;

e.   Third-Party Plaintiffs have received a return of their original approximate $5 million dollars worth of equity in the Project; however, they are obligated (contrary to the terms of the subject financing they had been seeking) to reinvest these monies back into the Project at the rate of $45,000.00 per month to cover the Dahlburg Farms, Inc.'s payment. These were monthly payments that the subject financing had been designed to cover, and thus Third-Party Plaintiffs have lost the opportunity cost on said funds since approximately July 2004, and continue to lose the opportunity cost on said funds for each successive month that expires hereafter; and

f.   Third-Party Plaintiffs have been otherwise damaged as a result of the Third-Party Defendants' intentional fraudulent conduct in this matter.

46.   In addition to its actual damages incurred as a result of the Third-Party Defendants' fraudulent conduct in this matter, Third-Party Plaintiffs are entitled to an

award of punitive damages in order to punish the Third-Party Defendants for their intentionally tortious conduct in this matter, as well as to deter others of a like mind from potentially engaging in said intentionally tortious conduct in the future.

WHEREFORE, by reason of the foregoing, Third-Party Plaintiffs pray for a judgment as follows:

A.     In the full amount of Third-Party Plaintiffs' actual damages incurred as a result of the Third-Party Defendants' intentionally tortious conduct;

B.     In an amount of punitive damages sufficient to punish the Third-Party Defendants for their intentionally tortious conduct as well as to deter others of a similar mind from engaging in such conduct in the future;

C.     For Third-Party Plaintiffs' reasonable costs and attorney's fees incurred in the processing of this Third-Party Complaint; and

D.     For all of the relief which the trier of fact deems Third-Party Plaintiffs to be entitled.

**COUNT II**
**(Unfair and Deceptive Acts and Practices Pursuant M.G.L. c. 93A)**

47.    Third-Party Plaintiffs hereby re-allege and incorporate all of the matter set forth in rhetorical paragraphs 1 through 46 set forth above as if set forth verbatim herein.

48.    The Third-Party Defendants are engaged in trade or commerce within the meaning of M.G.L. c. 93A, §1.

49.    The actions of the Third-Party Defendants were calculated to obtain the benefits provided by the Third-Party Plaintiffs under the Agreement (including, but not limited to, providing Tremont with an exclusive listing, agreeing to a $25,000.00 break-up fee, a mortgage brokerage fee in excess of $800,000.00, etc.) without Tremont having to provide Third-Party Plaintiffs with the consideration promised under the Agreement.

50.    The actions of the Third-Party Defendants as alleged herein constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93A, §§ 2 & 11.

51.    The unfair and deceptive acts committed by Third-Party Defendants were knowing and willful.

52.    Third-Party Defendants' conduct has caused and continues to cause Third-Party Plaintiffs damage.

53.    According to M.G.L. c. 93A, Third-Party Plaintiffs are entitled to an award of their reasonable attorney's fees and costs incurred as a result of the Third-Party Defendants' violations of said statute; in addition, Third-Party Plaintiffs are entitled to an award of two to three times their compensatory and consequential damages as a result of the knowing and willful nature of the violations of M.G.L. c. 93A.

WHEREFORE, Third-Party Plaintiffs respectfully request that they be awarded a judgment against the Third-Party Defendants as follows:

A.  In favor of Third-Party Plaintiffs in the full amount of their actual damages incurred as a result of the Third-Party Defendants' unfair and deceptive acts and practices under M.G.L. c. 93A in an amount to be determined by the trier of fact;

B.  A judgment in Third-Party Plaintiffs' favor equal to treble damages (*i.e.*, an amount three times Third-Party Plaintiffs' compensatory and consequential damages) for the knowing and willful nature of the violations of M.G.L. c. 93A;

C.  For an award to Third-Party Plaintiffs of their reasonable attorney's fees and costs incurred as a result of the Third-Party Defendants' violations of M.G.L. c. 93A; and

D.  All other relief which the Court or other trier of fact deems just and appropriate under the circumstances.

## COUNT III
### (Negligence)

54.  Third-Party Plaintiffs hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 53 of this Second Amended Third-Party Complaint as if set forth verbatim herein.

55.  The conduct of the Third-Party Defendants in this matter was negligent in several respects, including, but not limited to, the fact that Tremont assembled the financing package which the Third-Party Defendants knew, or a reasonable and prudent mortgage broker in the same circumstance as the Third-Party Defendants should have known, would never get financed.

56.  The Third-Party Defendants made statements, representations, and misrepresentations to Third-Party Plaintiffs which were knowingly false, and/or were

made without sufficient knowledge of their truth or falsity of said statements and that conduct, along with Third-Party Defendants' other conduct in this matter fell below the standard of care of an ordinary and reasonable and prudent person under the same or similar circumstances.

57.    The Third-Party Defendants' negligent misrepresentations and/or other acts of negligence were the proximate and foreseeable causes of the damages which were consequentially incurred by Third-Party Plaintiffs as set forth previously.

WHEREFORE, by reason of the foregoing, Third-Party Plaintiffs pray for a judgment against the Third-Party Defendants as follows:

A.    In an amount sufficient to compensate the Third-Party Plaintiffs for their actual and consequential damages incurred as a result of the Third-Party Defendants' negligence in this matter; and

B.    For all other relief which the Court or other trier of fact deems just and appropriate under the circumstances.

## COUNT IV
### (Breach of Contract)

58.    Third-Party Plaintiffs hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1 - 57 of this Second Amended Third-Party Complaint as if set forth verbatim herein.

59.    In all contracts entered into in both the State of Arizona as well as the State of Massachusetts there are implied covenants of good faith and fair dealing.

60.    Based upon the matters alleged herein, and otherwise, Third-Party Defendants breached the implied covenant of good faith and fair dealing, as well as other provisions contained within Agreement existing between the parties.

61.    The Third-Party Defendants never performed their part of the contract and never provided the "subject financing."

- 18 -

62.     The Third-Party Defendants' various breaches of contract have caused, and continue to cause, damage to Third-Party Plaintiffs.

WHEREFORE, by reason of the foregoing, Third-Party Plaintiffs pray for a judgment against the Third-Party Defendants as follows:

A.      In an amount sufficient to compensate Third-Party Plaintiffs for their actual and consequential damages incurred as a result of the Third-Party Defendants' breach of their Agreement;

B.      For all other relief which the Court or other trier of fact deems just and appropriate under the circumstances; and

C.      For an award of Third-Party Plaintiffs' reasonable attorney's fees and costs incurred in the prosecution of this matter.


## COUNT V
### (Consumer Fraud)

63.     Third-Party Plaintiffs hereby incorporate by reference all of the allegations set forth in rhetorical paragraphs 1-62 of this Second Amended Third-Party Complaint as if set forth verbatim herein.

64.     Arizona Revised Statutes ("A.R.S.") §44-1521, *et seq.* provides that the use by any "person" (defined as being a corporation or individual) of any deception, deceptive act, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact, with intent that the others rely thereon in connection with the sale of any merchandise, whether or not the person, has, in fact, been mislead, deceived, or damaged thereby, is declared to be an unlawful practice.

65.     The providing of personal services has been determined under Arizona law to be encompassed within the definition of "merchandise" within the scope and intent of A.R.S. §44-1521, *et seq.*

- 19 -

66.    A.R.S. §44-1521, *et seq.* inferentially creates a private right of action for deceptive practices in general and, accordingly, Third-Party Plaintiffs are entitled to bring this cause of action.

67.    Third-Party Plaintiffs have been actually damaged as a result of the Third-Party Defendants' unlawful practices as set forth previously herein.

68.    By reason of the foregoing the Third-Party Defendants are liable for violating A.R.S. 1522, *et seq.* and for having perpetrated a consumer fraud upon Third-Party Plaintiffs.

WHEREFORE, Third-Party Plaintiffs pray for judgment as follows:

A.    In the full amount of Third-Party Plaintiffs' actual damages incurred in this matter;

B.    For an amount equal to pre-judgment interest on said sums as allowed by law;

C.    For an award of punitive damages in the amount as determined by the court or other trier of fact which is sufficient to punish the Third-Party Defendants for their intentionally tortuous conduct in this matter, as well as in an amount sufficient to operate as a deterrent to others from engaging in such conduct in the future; and

D.    For all other relief which the court or other trier of fact deems just and appropriate under the circumstances.

Respectfully Submitted,

/s/ *William J. Hunt*

William J. Hunt (BBO #244720)
Armando J. Acosta (BBO #648242)
**Clark Hunt & Embry**
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920

Dated:  June 24, 2005

- 20 -

**CERTIFICATE OF SERVICE**

I hereby certify that on the 24th day of June, 2005, a courtesy copy of the above document was served, by first class mail, upon plaintiff's attorneys, James M. Wodarski, Esq., and Michael S. Day, Esq., Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 1 Financial Center, Boston, MA  02111:

/s/ *Armando J. Acosta*
————————————————